## WARDELL, *Appellant*, v. WATSON.

1. **Mineral, Grant of.** Coal and other mineral in place are land, and may be conveyed as such, and when thus conveyed, constitute a separate and distinct inheritance.

2. ———. By the grant of mines is granted the power to dig them.

3. ——— : RESERVATION OF. A reservation of mineral and mining rights is construed as an actual grant thereof.

4. ——— : RIGHT TO DIG FOR. Whether the estate in the mineral is created by grant or reservation is immaterial. In either case, the owner of the estate has a right to dig for the mineral.

5. ——— : ——— : USE OF SURFACE. One, who has the right to mine coal, or to take stone or mineral from land, has the right to enter and take possession even as against the owner of the soil, and to hold such possession and use the surface so far as may be necessary to carry on the mining, and this without express authority therefor.

6. ——— : ———. A reservation to the grantor in a deed of land of " the right of mining and removing at his pleasure coal and other minerals from under the surface of the land ; also, the right and privilege of sinking, if need be, air shafts for the purpose of working mining, and removing the same," gives the right to such grantor to place his buildings on the surface, to make a pond thereon to gather water to be used in running his machinery, to use a part for a dump, and to sink a shaft to the coal beneath.

7. ——— : ———. The recital in the clause of reservation of the right to sink air shafts, did not exclude the other implied rights incident to the reservation.

*Appeal from Macon Circuit Court.*—HON. ANDREW
ELLISON, Judge.

AFFIRMED.

*Dysart & Mitchell* for appellant.

(1)  The deed from the coal company to Tompkins
expresses on its face the estate granted and the estate
and privileges reserved.  It reserves the coal and the
right to mine and remove the same, and also to sink air
shafts if necessary in working said coal.  This is a limi-
tation upon the use of the surface to the uses specified.
2 Wait's Actions & Defences, 676; *Suffield v. Brown,*
4 DeG., J. & S. 185; *Johnson v. Jordan,* 2 Met. 234.
(2)  Aside from the fact that the deed itself fixed the
rights of the parties as to the surface, no such necessity
is shown as would imply an easement or right of way
through the surface to the coal.  *Cooper v. Maupin,* 6
Mo. 624; 35 Am. Dec. 302, 464, and notes; 64 Am. Dec.
747; *Brigham v. Smith,* 4 Gray, 297; 64 Am. Dec.
76; *Caldwell v. Copeland,* 37 Pa. St. 427; 78 Am. Dec.
436; *McDonald v. Lindell,* 96 Pa. St. 200.

*John F. Williams* for respondent.

(1)  In this case, both parties hold by grant, and it
is an old rule that when anything is granted, all the
means of attaining it and all its fruits and effects are
also granted.  Shep. Touch. 89–100; Bacon on Grants,
134; *Comstock v. Johnson,* 46 N. Y. 615; *Voorhees v.
Burchard,* 55 N. Y. 98; *Marvin v. Mining Co.,* 55 N.
Y. 538.  (2) A grant of minerals in lands gives the
right to mine for them, unless there is a positive restric-
tion in the grant. *Pomfret v. Ricroft,* 1 William
Saunders, 321, note 6; Shep. Touch. 89–90; *Chester
Emory Co. v. Lucas,* 112 Mass. 424; *Adams v. Briggs*

*Iron Co.,* 7 Cush. 361 ; *White v. Foster,* 102 Mass. 375. (3) . The power in the grant to sink air shafts is not a restriction on the general power to dig and remove coal. *Earl Cardigan v. Armitage,* 2 B. & C. 197 ; *Green v. Putnam,* 8 Cush. 21. (4) The right to work a mine, reserved by the grantor, carries with it the right to penetrate to the minerals through the surface of the land conveyed, for the purpose of digging them out and removing them. *Gould v. Co.,* 12 L. T. 842 ; 13 L. T. 109 ; *Rogers v. Taylor,* 1 H. & N. 706 ; *Hext v. Gill,* Law Rep. [Ch. Ap.] 700. (5) Respondent, being entitled to break through the surface, is entitled to the most convenient way. 23 Pa. St. 199 ; *Morris v. Edgington,* 3 Taunton, 39, 40 ; *Lawton v. Rivers,* 2 McCord, 445 ; *Pettengill v. Porter,* 8 Allen, 1. (6) The fee-simple ownership of coal, *in situ,* carries the power to dig and carry away, and confers the right of possession, as against the surface owner, so far as is necessary for mining purposes. Bainbridge on Mines, 66, *et seq.,* also p. 452 ; Collier on Mines, 58 ; 50 Mich. 604 ; 55 N. Y. 538 ; 7 East. Rep. 613 ; 11 Harris, 199, 204.

BLACK, J.—This was an action of ejectment to recover the surface of ten acres of land, being that part of the west half of the northwest quarter of section 14, township 57, range 15, south of the Hannibal & St. Joseph Railroad in Macon county.

On the fifteenth of June, 1869, the Central Coal & Mining Company conveyed the surface of the above-described eighty acres to one Tompkins, reserving to the party of the first part, their assigns and successors forever, "the right of mining and removing at pleasure coal and other minerals from under the surface of said land ; also, the right and privilege of sinking, if need. be, air shafts, for the purpose of working, mining, or removing the same." On the twelfth of January, 1871, Tompkins, by quit-claim deed, re-conveyed the ten acres

in question to the coal company. The defendant, Watson, acquired his interest in the land through a sale under a deed of trust made by the coal company. The deed of trust bears date, October 21, 1873, and the trustee's deed is dated September 9, 1875. The property in both of these deeds is described as the "northeast quarter of the northwest quarter, and the coal under the west half of the northwest quarter," etc., of said section. These deeds also convey other property. Afterwards, and on the twentieth of November, 1875, the coal company, by an assignee in bankruptcy, conveyed to Tompkins "the surface of that part of the south end of the west half of the northwest quarter," etc., being the ten acres in question. The plaintiff has acquired the surface of the whole eighty acres by *mesne* conveyances.

From the foregoing statement, it will be seen that the defendant, besides the coal under the eighty acres, acquired the surface and coal of the northeast quarter of the northwest quarter of the same section ; this forty adjoined the eighty on the east of the north half, being the part of the eighty acres farthest from the railroad. In 1876, or 1877, the defendant sold the surface of the forty-acre tract ; so that, thereafter, he did not own the surface of either tract, nor that of any adjoining tract. In 1881, the defendant entered upon the ten acres, sunk a shaft, put up a barn, stables, blacksmith-shop, and made a pond to gather water for his machinery. For the purpose of operating his mines under the surface of the whole eighty acres, he occupies about two acres of the surface of the ten acres. The shaft is seventy-five feet in depth, and is located eight feet from the railroad right of way. The evidence shows that he occupies no more of the surface than is necessary for the convenient and profitable operation of the mines. The plaintiff insists that defendant has no right to the possession of

any of the surface, even for the purpose of operating the mines beneath.

· Coal under the surface of the land is the subject of a grant or of a reservation. Coal and minerals in place are land, may be conveyed as such, and when thus conveyed constitute a separate and distinct inheritance. *Caldwell v. Fulton*, 31 Pa. St. 475. When a thing is granted, all means to attain it, and all the fruits and effects of it, are granted also, without further words. By the grant of mines is granted the power to dig them. Shep. Touch. 89. A reservation of minerals and of mining rights, it is said, is construed as an actual grant thereof; and though a reservation is to be construed most strongly against the grantor, still there will be retained in him all that it was the clear meaning of the parties to reserve from the conveyance. *Marvin v. Brewster Iron Mining Co.*, 55 N. Y. 538. Whether the separate estate, consisting of the coal, was first created by a grant or by a reservation is immaterial. In either case the owner of that estate has a right to dig the coal. One who has the right to mine coal, or to take stone or minerals from the land, has the right to enter and take possession, even as against the owner of the soil, and hold such possession, and use the surface so far as is necessary to carry on the mining operations, and this without any express authority therefor. *Turner v. Reynolds*, 23 Pa. St. 199; *Green v. Putnam*, 8 Cush. 21; Bainbridge on Mines [2 Ed.] 56; 3 Wash. Real Prop. [5 Ed.] top p. 414.

Applying these principles to the case in hand, there would seem to be no doubt but the defendant has and had the right to place his buildings on the surface, make a pond thereon to gather water to be used in running the machinery, to use a part for a dump, and to sink a shaft to the coal beneath. But it is said this conclusion should not be reached because there is in the deed of the coal company to Tompkins, dated the fifteenth of

June, 1869, an express right and privilege given to sink an air shaft, and that this expressed right excludes all others. It might well be contended that as to the ten acres, a part of which is occupied by the defendant, that he holds by a simple grant of the coal, for it is to be remembered that Tompkins, in 1871, conveyed the ten acres back to the coal company, and from that time to the date of the deed of trust, the company owned the coal and the surface, and the two estates before carved out may well be regarded as having become merged into one. In this view of the case, defendant owns the coal by and through a deed which simply grants the coal, and the plaintiff claims the surface by a subsequent grant of surface and nothing more. There could then be no doubt of the application of the principles of law before stated so far as the ten acres are concerned.

But let it be conceded that the defendant's rights to the whole of the eighty acres are to be measured by the reservation. The reservation is "the right of mining and removing at pleasure coal and other minerals from under the surface of said land; also, the right and privilege of sinking, if need be, air shafts for the purpose of working, mining, or removing the same." In the case of *Marvin v. Brewster Iron Mining Company, supra,* it is said: "Hence a grant of minerals in the land gives a right to mine for them, unless there is a positive restriction in the grant itself. The plaintiff claims that this general power, if thus acquired as an incident to a grant, is limited by an especial power or privilege particularly mentioned in the grant or reservation. And, as the reservation here does, in particular terms, stipulate for a privilege of going to and fro, he insists that this privilege is all that the defendant has. Such is not the effect of such a particular."

In the case of the *Earl of Cardigan v. Armitage,* 2 B. & C. 197, there were exceptions and reservations of the coal. To this exception was added express liberty,

introduced by the words "together with," to sink pits,. to get the coal, and to sell and carry away the coal.. Bayley, J., after making mention of the rule, that, when anything is excepted all things necessary for the obtaining of it are excepted also, proceeds to say : "It may be taken as clear that an express liberty does not always control what would otherwise exist ; especially if the express liberty goes beyond what would be implied. To give it a controlling power, the intention that it should have that effect must be very plain."

. In this case, it appears that in mining for coal, the working shaft is often used as an air shaft, having two compartments, one for the down, and the other for the up, current of the air. Again, it is said an air shaft is. often placed forty or fifty yards from the working shaft, and in such cases it is a different thing from the working shaft. Now, from the reservations of the coal, without further words, a right to sink a vertical shaft, and to do all things reasonably necessary to raise the coals, when separated from the earth, and to carry them away, would be implied—would follow as an incident to the grant or reservation. The parties to the deed, as if some doubt might arise as to the right to sink a separate air shaft, made express provisions therefor. The intention to exclude the incidental or implied powers does not plainly appear. No negative words are used. The express liberty seems to have been designed as an enlargement of, not a restriction upon, the implied powers.

It is further said that the defendant ought not to be allowed to use the surface of the ten acres, because he formerly owned the surface and coal of the forty acres. lying on the east of the north half of the eighty acres. in question, and that he could have retained the surface of that forty, and sunk his shaft therein, and built his. works thereon. Had he done all this, he would be obliged to haul the coals a quarter of a mile in order to

reach the railroad, and that, too, over the plaintiff's land. He has, as we have seen, a right to sink a shaft and erect hoisting machinery at a convenient place; and the plaintiff holds the surface subject to that right. It is no answer to this right to show that he might go to a place a quarter of a mile from the railroad, and there sink a shaft. The value of the surface of the eighty acres is small compared with the value of the mines and machinery used in operating them; and, on the whole, we see no merit whatever in the plaintiff's case. The law also is with the defendant.

The judgment is, therefore, affirmed. All concur.