## JAMES GORDON et al. v. ALLEN PARK et al., Appellants.

**Division One, April 13, 1909.**

1. **MOTION TO AFFIRM: Docket Fee.** A motion to affirm the judgment, for the reason that the transcript was not filed by appellant within the time prescribed by statute and the rules, presented to the clerk before appellant files his case, cannot be considered by the court and should not be marked filed by the clerk, unless the usual docket fee accompanies the motion.

2. **EJECTMENT: Coal Mine: Limitations: Adverse Possession: Continuous.** The question of adverse possession of a coal mine is tried just as would be the adverse possession of the surface. And defendant cannot complain that plaintiff's instruction required the adverse possession to be "continued" for ten years, without any explanation or qualification of that word, for two reasons: *first*, if he desired an explanation as to what would be a continuous adverse possession of a coal mine, he ought to have asked an appropriate instruction himself; *second*, he invited the error, if any it was, since his own instruction, asked and given, used in an equally pointed way the same word "continued."

3. ———: **Verdict Against Evidence: Passion and Prejudice.** Where plaintiff's evidence tended to show many lengthy breaks in the continuity of defendant's alleged adverse possession, the court will not undertake to say that the verdict for plaintiff on the issue of limitations is so palpably against the weight of the evidence as to indicate passion and prejudice on the part of the jury.

4. ———: **Judgment: Coal: Premises.** The judgment adjudged that plaintiffs recover "all the coal situated under the surface" of certain lands, describing them, "and that a writ of restitution issue for the possession of said premises." *Held*, that the word "premises" does not mean that plaintiffs are to be given the separate estate in the surface of the lands described; but a grant of coal carries with it the use of the surface so far as is necessary to carry on mining operations, and the judgment is proper, and means the mineral premises as distinguished from the surface premises.

Appeal from Boone Circuit Court.—*Hon. W. N. Evans*, Special Judge.

AFFIRMED.

*N. T. Gentry* and *Boyle G. Clark* for appellants.

(1) Instructions 2 and 3, given at the request of the plaintiffs, do not correctly state the law. When this case was before this court on a former occasion, an extract from Barringer & Adams on Law of Mines & Mining was quoted approvingly. That authority says: "A cessation of operations in accordance with the custom of the neighborhood, or from necessity occasioned by some natural agency, would not be an interruption of the possession." Gordon v. Park, 202 Mo. 246. This proposition, so firmly established by abundant authority, and so well recognized by this court, was wholly ignored by the instructions above referred to. The giving of such prejudicial instructions must of necessity constitute reversible error. With such instructions given to the jury, learned counsel could well argue, and the jury could well believe, that, as the defendants (appellants) had not worked said mines every day for a period of ten years, the Statute of Limitations had not run in their behalf. The only question in the case was whether the Statute of Limitations had given the defendants title to the coal mines; and an erroneous instruction on that subject (indeed two erroneous instructions) cannot be other than prejudicial. Said two instructions are not only erroneous, but they are contradictory to the others that were given. (2) The verdict of the jury is not only against the weight of the evidence, but against the weight of the evidence given by plaintiffs' witnesses, and against all of the evidence. In view of this evidence, it is impossible to see how the jury could have done otherwise than find for defendants, unless their verdict was due to bias or prejudice. When the verdict is due to bias or prejudice, it is the duty of the Supreme Court to accord the defeated party a new

trial. James v. Insurance Co., 148 Mo. 15; Boggess v. Railroad, 118 Mo. 328; Baker v. Stonebraker, 36 Mo. 338. (3) Judgment was entered for plaintiffs for the recovery of said coal, situated under said described premises, "and that a writ of restitution issue for the possession of said premises." It will therefore be seen that the judgment, which awards a writ of restitution to plaintiffs for the possession of the premises (which, of course, means the real estate in question), was erroneous.

*Webster Gordon pro se; E. W. Hinton* of counsel.

(1) The appeal having been taken in October, 1907, was returnable to the April term, 1908, and hence the short transcript should have been filed at least fifteen days before the April term. Hence, filing the transcript on the 17th of April, 1908, was too late. R. S. 1899, secs. 812, 813; Rule 28 of this court; Lucas v. Heuston, 168 Mo. 658; Harris v. Chitwood, 109 S. W. 653; Thomas v. Sullivan, 79 Mo. App. 384. (2) (a) No error was committed in giving plaintiffs' second and third instructions which told the jury that in order to defeat the plaintiffs' paper title, the defendant or those under whom he claimed must have had ten years' continuous possession of the coal, for it is elementary that adverse possession must be continuous whether the subject involved is the surface or the mineral beneath it. Armstrong v. Caldwell, 53 Pa. St. 284; Brown v. Martford, 173 Mo. 183; Gordon v. Park, 202 Mo. 247. (b) It may be true that possession of a mine or the mineral may be in fact continuous, although mining operations are not carried on continuously at all times; but if appellants desired the jury to be so informed in order to guard against any possible misunderstanding, they should have asked an instruction to that effect. Smith v. Fordyce, 190 Mo. 30; Montgomery v. Railroad, 181 Mo.

498; Dysart v. Reed, 114 Mo. App. 296.   (c) ·Appellants' instruction 1 submitted the matter in precisely the same way, where it told the jury that if the defendants "have been constantly in the open and continued possession," etc., they were entitled to the verdict, and hence they are in no position to complain.

GRAVES, J.—This is the second appeal in this case.   The former appeal was by the plaintiffs and was heard by Division Two of this court, 202 Mo. 236. The cause was reversed for errors in defendants' instructions, pointed out in the opinion.   Upon a retrial the plaintiffs by a verdict of nine jurors, recovered the possession of the property sued for without damages or rents and profits, and judgment went accordingly.

In the former case, BURGESS, J., first states certain undisputed facts and certain facts proven by the records, which statement is applicable here, and is as follows:

"This is an action in ejectment, instituted by plaintiff in the circuit court of Boone county, to recover possession of an undivided two-tenths of all the coal underlying certain land in said county owned by defendant Allen Park, which land and coal mine thereon he had leased to defendant George Melloway. The petition is in the usual form. The defendants filed separate answers, that of defendant Melloway being simply a general denial; but defendant Park's answer, in addition to denying each and every allegation in the petition, set up and pleaded the Statute of Limitations. . . . . There is no dispute as to the ownership of the land, but only as to the coal underlying the same. Berkley Estes was the common source of title.   It appears from the evidence that on February 25, 1859, he conveyed to Boyle Gordon an undivided half interest in the coal mine in controversy, reciting in the deed that the other half had previously been conveyed to John B. Gordon.   By deed, dated March 5, 1859, Boyle

Gordon conveyed his undivided interest in the mine to George W. Gordon, the father of the plaintiffs. This deed was recorded in the recorder's office of Boone county, March 7, 1859. George W. Gordon died in 1860, and by the terms of his will, which was probated July 24, 1860, all of his real and personal estate was given to his widow, Ann Eliza Gordon, during her lifetime, and at her death to her children, Irvin Gordon, Irene Gordon, Jennie Gordon, Webster Gordon and James Gordon, the two last named being the plaintiffs in this action. An inventory of all the real and personal estate of said George W. Gordon was made by the executors, Ann Eliza Gordon and James M. Gordon, but there was no mention in said inventory of any interest of the testator in said coal mine, nor was there any evidence that said George W. Gordon ever used or claimed any interest therein.

"The land upon which the coal mine in question is situated was conveyed by Berkley Estes to his son-in law, William A. Park, by deed executed June 1, 1868, which deed contained no reservation as to the said coal mine. William A. Park died on May 20, 1874, leaving a widow, a daughter and an infant son, the latter being Allen Park, defendant in this suit. By his last will and testament, William A. Park gave this land to his widow during her lifetime and to his children at her death. His widow died in 1875, and his daughter died intestate a few years later, never having married. Defendant Allen Park, being a child three years old at the time of his mother's death, was taken to the home of his uncle, William B. Estes. Mr. Estes qualified as executor of the estate of William A. Park, deceased, and also qualified as guardian and curator of defendant Allen Park, and acted as such guardian and curator until February, 1894. On December 27, 1893, defendant Allen Park became of age, having married a short time prior thereto, and moved to this land, living thereon till March 16, 1901, when he sold it to Sarah

E. Hayes. Mrs. Hayes and her husband had this mine worked till they sold the place to defendant, George Melloway, on February 2, 1903. The next day Melloway conveyed the land back to Allen Park. In neither of the deeds of conveyance was there mention of any reservation as to the said coal mine. On the day of the last-named conveyance, defendant Park executed a mining lease to said Melloway authorizing him to mine on said land.''

Judge BURGESS likewise makes a statement of the facts pro and con upon the question of adverse possession, but as the case was retried, these facts we will state as they appear in this record.

The evidence upon the part of the plaintiffs upon the question of adverse possession of the coal mine tended to show that, whilst coal was taken therefrom at intervals, beginning at a time before the death of William A. Park, up to the time of suit, yet such acts were not continuous, but on the other hand coal would be taken out for a season or two (that is, during the winters) at a time, and then operations would cease for one or more years, then again be resumed, for awhile, and again discontinued as above stated. The evidence for plaintiffs also tended to show that there was no period of ten consecutive years during all this time, when coal was mined or taken from the premises described in the petition.

For the defendant, the evidence tended to show that there was a period of ten consecutive years during which, in proper season (winter months) coal was taken from the mine on the land in question, and that William A. Park and his successors in title openly cliamed title not only to the surface but to the coal as well. It also tends to show that no claim was made by plaintiffs until the bringing of this suit.

Plaintiffs also showed by two witnesses that William A. Park admitted in his lifetime that the coal belonged to the Gordons. And plaintiffs' evidence

further tended to show that the mining first done by William A. Park was in connection with one of the John B. Gordon heirs, mentioned in the statement made by Judge BURGESS. That by some agreement they jointly operated the mine.

This sufficently states the facts for a review of the legal questions presented.

The court refused a peremptory instruction to find for plaintiffs, but at their request gave the following:

"1. The court instructs the jury as plaintiffs and defendant Allen Park claim title from and through Berkley Estes, deceased, to all the coal under the surface of the land described in plaintiffs' petition, it was sufficient for plaintiffs to show a derivative title from him to said coal, without proving their title further back.

"2. The court instructs the jury that plaintiffs have proved a perfect paper title to two-tenths of all the coal under the surface of the land described. in plaintiffs' petition, to-wit, all that part of the east half of the southwest quarter of section 16, township 48, and range 12, in Boone county, Missouri, north of the Columbia and Cedar Creek Gravel Road, back to Berkley Estes, deceased, and your finding and verdict must be for the plaintiffs for the undivided two-tenths of said coal, unless the jury believe from the evidence that defendants, or one of them, has had such possession of said coal as is hereinafter explained in the instructions given for plaintiff.

"3. The court instructs the jury before they can find for the defendants, or either of them, on account .of having possession of the said coal they must believe from the evidence that defendants or one of them, or those under whom he or they claim title to said coal, has had the actual, exclusive, continued, peaceable and hostile possession of said coal for ten or

more consecutive years prior to the institution of this suit.

"4. The court instructs the jury that the actual, exclusive, continued, peaceable and hostile possession of the surface of the land by the defendants, or either of them, described in the foregoing instructions, will not carry with it the possession of the coal under the surface of said land, and you should not find for the defendants, or either of them, on that account."

For the defendants the court instructed thus:

"1. The court instructs the jury that if the jury believe from the evidence in the case that the defendant Allen Park and those under whom he claims title and ownership have been constantly in the open, notorious, adverse, exclusive and continued possession of the coal mine under the land described in the petition, for the period of ten years or more prior to the institution of this suit, and that the defendant Park, and those under whom he claims title, have continually claimed to be the owners of said mine and coal during said ten years or more, then the jury must find for the defendants.

"2. The court instructs the jury that evidence of statements said to have been made many years ago by persons now deceased, ought to be received by the jury with care and caution, taking into consideration the length of time that has elapsed, the liability of the witness to forget or misquote the language used, as well as the failure of the witness to have understood the language that was used by the deceased.

"3. The jury are the sole judges of the credibility of the witnesses and of the weight and value to be given their testimony. In determining such credibility and weight the jury may take into consideration the character of the witness, his or her manner on the stand, his or her interest, if any, in the result of the case, his or her feelings toward the plaintiffs or to-

ward the defendants, the reasonableness or unreasonableness of the testimony given, as well as the facts and circumstances given in evidence. And if the jury believe that any witness has willfully sworn falsely to any material matter in issue, then the jury may disregard any part or all of the testimony of such witness.''

No instruction asked by defendant was refused. One as to form of verdict given for defendant, and a formal one as to number of jurors required to return a verdict, given by the court of its own motion, are omitted. The court refused one for plaintiffs, which is likewise omitted.

I. In the brief of plaintiffs (respondents) it is suggested that they filed a motion to affirm the judgment under section 813, Revised Statutes 1899, and our rule 28, for the reason that the transcript to this court was not filed by the defendant within the time prescribed by the statute and rule. An examination of our record fails to show a filing of this motion. Such document, after search, was found in the clerk's office, but not marked filed, for the reason, as stated by our clerk, that the same was not accompanied by the usual docket fee of ten dollars. It has been the uniform practice to require such fee before filing such motions, and the motion is not therefore before us for consideration. Such motions are usually filed before the appellant files his case, and it has been the uniform practice to require the fee before filing and docketing such motion. There being no motion on file this matter will not be further noticed.

II. Defendant complains of instructions two and three, supra, given for the plaintiffs. As we gather the contention of defendant it is the unqualified and unexplained use of the word ''continued'' in said instruction of which he complains. He says in brief:

"With such instructions given to the jury, learned counsel could well argue, and the jury could well believe, that, as the defendants (appellants) had not worked said mines every day for a period of ten years, the Statute of Limitations had not run in their behalf."

We are of opinion that the law was well declared upon the former appeal. This court then approved the following from Barringer and Adams on the Laws of Mines and Mining, p. 569:

"The surface owner setting up the statute must establish a possession of the mine, as such, independently of his possession of the surface. Such a possession must be actual, notorious, exclusive, continuous, peaceable, and hostile for the statutory period. And in these respects the surface owner is in no better position than a stranger . . . Actual possession is taken by the opening of mines and carrying on of mining operations. That possession is continuous if the operations are continuous, or are carried on continuously at such seasons as the nature of the business and the customs of the country permit or require. A cessation of operations in accordance with the customs of the neighborhood, or from necessity occasioned by some natural agency, would not be an interruption of the possession. But there must be something evidencing possession in the interval which connects the operations when resumed with those which have gone before, and to distinguish such possession from a series of repeated acts of trespass."

And discussing the question of continuity of possession the court further said:

"It was not necessary, however, in order to give defendants the benefit of the Statute of Limitations, that work in the mine should have been done every day, or that such work by defendants should have been

219 Sup.—39

done within the view of the public. 'All the authorities agree that the acts of possession must be visible and continuous for the requisite period in order to create the bar.' [Sedgwick and Wait on Trial of Title to Land, secs. 735, 737.] It is not required that an act of ownership should be done every day or month or at any definite intervals, but they should be of such frequency and character as would at all times apprise the owner 'that his seizin was interrupted and that his title may be endangered.' [Goltermann v. Schiermeyer, 125 Mo. l. c. 302.] To prevent a break in the possession of those claiming possession of the mine, they should have continued to exercise acts of possession and ownership over it, as by keeping off trespassers, giving permission to persons to take coal therefrom, paying taxes thereon, mining the coal when practicable or advantageous, or leasing the mine to others, from all of which plaintiffs must have known or inferred that defendants were claiming the coal as their own."

The question of adverse possession of the mine is tried just as would be the question of the adverse possession of the surface. The instruction objected to is one frequently given in cases where the Statute of Limitations is invoked as to the surface. But there are two reasons why defendant cannot now complain of these instructions. First, if the defendant wanted the word "continued" as used in the instruction defined or explained, he should have offered an instruction to that effect, failing to do so, he cannot now complain. Had he asked such an instruction, it should have been given, and no doubt would have been given. There may be cessations in the operation of mines which would not break the continuity of the adverse possession, and such matter could have been appropriately set forth in a proper instruction, but in this case the trial court gave all that defendants asked. The instructions given for plaintiffs in their general outlines

are proper, and defendant failed to ask one embodying the ideas he suggests to this court. Under such circumstances, he cannot be heard here. [Smith v. Fordyce, 190 Mo. l. c. 30; Montgomery v. Railroad, 181 Mo. l. c. 498; Wheeler v. Bowles, 163 Mo. l. c. 409; Christian v. Insurance Co., 143 Mo. l. c. 467; Dysart-Cook Mule Co. v. Reed, 114 Mo. App. l. c. 303.]

In the last case, supra, one of the complaints lodged against the instruction was that some of the words used therein were not explained or defined. Such is the complaint in the case at bar. In that case, BLAND, P. J., well said: "There is nothing vague or uncertain in the language of the instruction. If there are terms used which plaintiff thought should be explained to the jury why did it not ask an instruction properly defining such terms? Why lie by and wait the chances of a favorable verdict before making complaint if it be apprehended that the jury would not understand the meaning of terms used in the instruction as given, which is not erroneous? In these circumstances, plaintiff must abide the result."

Secondly, the defendant cannot complain, because if the court, *nisi*, was in error in not explaining the word "continued" in instruction No. 3 for plaintiff, he was perhaps led into the error, if such it was, which we do not admit, by the conduct of defendant, for in his instruction numbered 1, asked and given, he uses the expression, "have been *constantly* in the open, notorious, adverse, exclusive and *continued* possession of the coal mine," etc., and this too without explanation or definition of either the words "constantly" or "continued." In other words he uses the word just as strongly as do the plaintiffs. He cannot now be heard to complain. [Phelps v. City of Salisbury, 161 Mo. l. c. 14; Johnson-Brinkman Co. v. Bank, 116 Mo. l. c. 569; Christian v. Ins. Co., 143 Mo. l. c. 467; Reilly v. Railroad, 94 Mo. l. c. 611.]

In this case both the instructions for the plaintiffs and the defendants use the word "continued" in the same way and manner. In the Reilly case, supra, we said: "It is too late for defendant, after having thus invited the court to give such instructions, to insist that the court erred in complying with the request. It is settled in the following cases that one party cannot be allowed to complain of another's instructions where his own announced the same doctrine, although it be erroneous: Thorpe v. Railroad, 89 Mo. 650; Holmes v. Braidwood, 82 Mo. 610; McGonigle v. Daugherty, 71 Mo. 259; Smith v. Culligan, 74 Mo. 387; Davis v. Brown, 67 Mo. 315." And again, in the Christian case, supra, it was said: "A party is not at liberty to complain of an instruction on the part of his adversary where his own exhibits the same fault."

So also in a much stronger case, Phelps v. City of Salisbury, we thus stated the rule: "This instruction was therefore unwarranted by both the pleadings and the evidence and, but for the fact that the defendant by its fifth and sixth instructions in substance adopted the same theory, the judgment would have to be reversed, but a party will not be heard to complain of an error which he invites or adopts."

We therefore hold that defendant is in no position to urge as error the two instructions by him criticised and this contention will be overruled.

III. We are asked to reverse the judgment because the verdict is so palpably against the weight of the evidence as to indicate passion and prejudice upon the part of the jury. This insistence we cannot sustain. The evidence in behalf of the plaintiffs tended to show many and lengthly breaks in the continuity of the alleged adverse possession. Of course that of defendant was contra. The question was then one for the jury and we cannot upon this

record say there is evinced passion or prejudice in the action of the jury. This contention is therefore disallowed. ·

IV. The conclusion reached in what precedes results in an affirmance of the judgment, unless it should be modified, and this we are asked to do. · The judgment after formal recitals of the verdict and other matters, concludes:

"It is therefore ordered and adjudged by the court that the plaintiffs have and recover of and from defendants Allen Park and George Melloway, · the possession of the following described premises, to-wit: Two-fifths of one equal undivided half of all the coal situated under the surface of all that part of the east half of the southwest quarter of section sixteen, township forty-eight, and range twelve, lying north of the Columbia and Cedar Creek Gravel Road in Boone county, Missouri; that they have and recover of and from the defendant all the costs of this cause, and that a writ of restitution issue for the possession of said premises."

The objection urged is in the use of the word "premises" in the last sentence. As said by BLACK, J., in Snoddy v. Bolen, 122 Mo. l. c. 487: "Coal, mineral and stone under the surface of the earth are subjects of grant and exception; and when excepted in a deed become a separate and distinct inheritance. They may be conveyed separate from the surface. [Wardell v. Watson, 93 Mo. 107; Caldwell v. Fulton, 31 Pa. St. 475; Lillibridge v. Coal Co., 143 Pa. St. 293; Coal Co. v. Mellon, 152 Pa. St. 286.]"

In this case the separate inheritances were created by deed of grant, whilst in the Snoddy case they were created by exception in the deed. But whether created by a deed directly granting the mineral estate, or by an exception in a deed granting the surface estate, there are created two separate and dis-

tinct estates. To the same effect is Wardell v. Watson, 93 Mo. l. c. 111. To our minds the words "said premises" used in the judgment simply refer to what precedes, and only mean that restitution go for two-tenths of the separate mineral estate. In other words, it means the mineral premises as distinguished from the surface premises.

The grant of the coal carries with it the use of the surface so far as is necessary to carry on mining operations. [Wardell v. Watson, 93 Mo. l. c. 111, and cases cited.]

The word "premises" as used in the judgment only goes to the mineral estate and things appurtenant thereto, and in this sense it is correct.

The judgment will be affirmed, and it is so ordered.

All concur.