## IRVIN GORDON et al. v. JOSEPH H. MILLION et al., Appellants.

### Division One, February 28, 1913.

1. **CONVEYANCES: Mineral Estate: Severance.** There may be a complete severance of the mineral estate from the surface estate, and the mineral estate may be conveyed separately from the surface estate — either by exception or by grant.

2. ————: ————: **Construed Against Grantor.** A deed which attempts to convey a coal mine must be construed most strongly against the grantor.

3. ————: ————: **Coal Mine: Open and Operated.** The owner of land by warranty deed conveyed "the one equal undivided half of the coal mines being and situate on the east half of the southwest quarter of section sixteen . . . ; said mines are now showing themselves in the bed of the creek running through said described tract of land about one hundred and fifty yards more or less above the ford of said creek on" a certain public road. *Held*, that these words do not restrict the grant to open or operate mines, or to such veins as were in fact open and exposed on the creek mentioned, nor to the particular viens of coal shown by croppings on the creek, but were used in the sense of "coal deposits, subject to being mined."

4. **EJECTMENT: Segregated Mineral Estate: Possession of Defendants.** .Where defendants claimed the entire property under a deed which made no reservation of the coal deposits on the land, and were at the time in possession of the surface, but not using or mining the coal, but were claiming everything from the surface to the center of the earth, there was proof of such possession by defendants of the coal deposits as authorized a judgment in ejectment for the possession of the mineral estate, both plaintiffs and defendants claiming through a common source of title, who by deed had made a separate grant of the mineral estate to plaintiffs' ancestor, there being no question of title by limitations to said separated estate.

5. ————: ————: ————: **Separate Estate: Right to Surface.** Coal deposits, when separated by grant or by reservation in a deed, are as much an estate in lands as is the surface of the same lands; and such an estate carries with it the right to use so much of the surface estate as may be reasonably necessary for the proper use of the mineral estate; and plaintiffs, who by deeds are owners of the segregated mineral estate alone,

have the right to sue in ejectment to recover that estate . if it is in possession of defendants who own the surface estate and claim to own and be in possession of both.

6. ————: **Common Source of Title.** When plaintiffs in ejectment put , in deeds which show that they and defendants claim through a common source, and defendants by their pleadings or proof do not claim a different source, the plaintiffs need not go back of that common source to deraign title.

Appeal from Boone Circuit Court.—*Hon. Nat M. Shelton,* Special Judge.

AFFIRMED.

*McBaine & Clark* for appellants.

(1) The proof failed to sustain the allegations of the petition. 7 Cyc. 266; Mining Co. v. Grogan, 53 Ill. App. 60; White on Mines and Mining Injuries, p. 1; Gloninger v. Coal Co., 55 Pa. St. 9; Shaw v. Wallace, 25 N. J. L. 453. (2) The respondents failed to prove that appellants were ever in possession of the coal described in plaintiffs' petition. Lewellyn v. Lewellyn, 201 Mo. 306; Sec. 2385, R. S. 1909; R. S. 1899, sec. 3056; 27 Cyc. 642; Zerres v. Vannia, 134 Fed. 610; Shaw v. Tracy, 95 Mo. 532; Callahan v. Davis, 90 Mo. 78; Ins. Co. v. Cummins, 90 Mo. 271; Gordon v. Park, 219 Mo. 600; Sec. 2525, R. S. 1909; Sec. 650, R. S. 1899, amended, Laws 1909, p. 343. (3) Plaintiffs failed to prove title to the property involved. McAnaw v. Clark, 167 Mo. 443; Stewart v. Land Co., 200 Mo. 281; Duncan v. Able, 99 Mo. 188; Snuffer v. Howerton, 124 Mo. 637; McVey v. Carr, 159 Mo. 648; Nalle v. Thompson, 173 Mo. 595; Pierce v. Lee, 197 Mo. 480.

*E. W. Hinton* for respondents.

. . (1) The words, "coal mines situate on the east half of the southwest quarter, etc.," as used in the deed from Berkley Estes to Boyle Gordon, are sufficient to pass title to all the coal deposits under the entire tract,

because a grant is to be construed most strongly against the grantor. Bray v. Conrad, 101 Mo. 331. (a) The term "coal mine" is commonly used in the sense of coal deposits, as when we speak of the coal mines of Alaska or of Manchuria. It is evident that this term was not used in Berkley Estes' deed in the sense of an opened mine or a pit or shaft, because the deed mentions the fact that the mines were showing themselves in the bed of the creek. It would be absurd to talk about opened shafts showing themselves in the bed of the creek. (b) If the words of the deed are given their obvious and natural meaning, the grant is of the coal deposits on the southwest quarter, etc., and naturally embraces all coal deposits under the entire tract, unless there is some restriction, either in express terms or by necessary implication, because the words are to be taken most strongly against the grantor, and if left in doubt, it must be resolved in favor of the grantee. Wordel v. Watson, 93 Mo. 107. (2) The possession of the surface under color of title to the coal and under express claim of title to the coal, was sufficient possession by defendants to enable the plaintiffs to maintain ejectment. Gordon v. Park, 219 Mo. 600. Where there is no physical occupancy by a third person, it is sufficient that the defendant have constructive possession. The mere constructive possession of the minerals from actual possession of the surface under claim of right to the whole, is not sufficient to create title by adverse possession, which is a vastly different thing. To apply such a rule would mean that ejectment would never lie for coal under the surface, except where the defendant was actually working it and mining it when the action was brought. (3) The plaintiff proved that Berkley Estes was the common source of title, and that is sufficient. Sloan v. Chitwood, 217 Mo. 462.

GRAVES, J.—A reading of the record and the statements made by counsel upon the two sides of this

controversy, demonstrates, that the statements made by either counsel could be safely adopted. We adopt that made by counsel for the respondents, because by a fraction it could be said to be the winner in a contest for brevity. Both are brief, however, and do not differ as to what is shown by the record. The questions are largely questions of law. Respondents thus state their case to this court:

"This was an ejectment to recover the coal under a part of the east half of the southwest quarter of section 16, township 48, range 12, in Boone county, Missouri. This is a part of the same tract involved in Gordon v. Park, 202 Mo. 236, and Gordon v. Park, 219 Mo. 600, and the plaintiffs relied on the same chain of title, which is as follows:

"1. Deed from Berkley Estes to Boyle Gordon, executed February 26, 1859, and duly recorded, and conveying 'the equal undivided half of the coal mines situated on the east half of the southwest quarter, etc.; said mines are now showing themselves in the bed of the creek running through said described tract of land.'

"2. Deed from Boyle Gordon to George W. Gordon, containing the same description and recitals.

"3. Will of George W. Gordon, devising the residue of his property to the plaintiffs.

"For the purpose of proving that Berkley Estes was the common source of title, plaintiffs read:

"1. The will of Berkley Estes, devising this tract of land to his daughter, Sarah F. Estes, 'except the interest in the coal mines which I have sold, etc.'

"2. Deed from Allen Park, sole heir of Sarah F. Estes, deceased, to Mary E. Million, conveying that part of the tract in controversy. This deed contained no exception of the coal mines.

"3. The admission that Mary E. Million died intestate, leaving the defendants as her sole heirs at law.

"The oral evidence showing that no mining had ever been done on this part of the tract, and no pits or

shafts had been opened, but that while Allen Park was the owner of the land, a well was dug, and that the men struck a seam or vein of coal.

"The plaintiff, Webster Gordon, also testified that the defendants were in possession of the surface, and claimed the coal also, because the deed under which they claimed contained no exception of the coal. The defendants offered no evidence, and the court sitting as a jury found for the plaintiffs.

"Defendants now appear to rely on three points, viz.:

"1.  That the language of the deed from Berkley Estes, namely, 'The coal mine being, and situate on the east half of the southwest quarter, etc.,' was not sufficient to pass title to any and all coal deposits under that tract, but that because of the recitals that 'said mines are now showing themselves in the bed of the creek,' etc., the grant should be restricted to these precise croppings, or at least the same seams or veins so mentioned, and hence the plaintiff could not recover without proof identifying the coal under this part of the land as the same vein mentioned in the deed as cropping out in the bed of the creek above the ford.

"2.  That there was no proof that defendants were in possession of the coal because no mines had been opened on the part of the land here in controversy.

"3.  That there was no proof that Berkley Estes was the common source of title, and hence no proof of plaintiffs' title to the coal."

This statement had page references to the abstract which we have omitted in quoting the statement. It may be that appellants' contentions are not as fully stated by respondents as they are urged in the brief, but upon the whole this statement of the respondents sufficiently states the case, and we adopt it because it is as concise and fair as we could make it.

I.   The first point made by the appellants is that the proof failed to sustain the allegations of the peti-

**Ejectment for Unmined Coal.**

tion. About this contention cluster a number of points which we will separately discuss. First, the point raises the question as to what is the real mean-

ing of the Berkley Estes deed. The terms of that deed had better perhaps be more fully outlined, because its language becomes important. The deed is short, and for this discussion it had best be set out:

"Know all men by these presents that I, Berkley Estes, of the county of Boone and State of Missouri, in consideration of the sum of fifty dollars in hands paid, the receipt of which is hereby acknowledged, have this day granted, bargained and sold, and by these presents do grant, bargain, sell, and convey unto Boyle Gordon, his heirs, and assigns, the one equal, undivided half of the coal mines being and situate on the east half of the southwest quarter of section sixteen, township forty eight and range twelve in Boone county, Missouri; said mines are now showing themselves in the bed of the creek running through said described tract of land about one hundred and fifty yards more or less above the ford of said creek on the road leading from Fulton to Columbia. The other half of said mines having been sold to John B. Gordon in his lifetime by Richard Estes by deed dated 31st of May, 1850. To have and to hold said undivided half of said mines unto the said Boyle Gordon, his heirs and assigns forever."

That there may be a complete severance of the mineral estate in lands from the surface estate is

**Severance of Mineral Estate.**

clearly shown by the authorities in this State and elsewhere. In the case of Gordon v. Park, 219 Mo. 613, in discussing an objection urged against the judgment *nisi* in that

case, we said:

"The objection urged is in the use of the word

'premises' in the last sentence. As said by BLACK, J., in Snoddy v. Bolen, 122 Mo. l. c. 487: 'Coal, mineral and stone under the surface of the earth are subjects of grant and exceptions; and when excepted in a deed become a separate and distinct inheritance. They may be conveyed separate from the surface. [Wardell v. Watson, 93 Mo. 107; Caldwell v. Fulton, 31 Pa. St. 475; Lillibridge v. Coal Co., 143 Pa. St. 293; Coal Co. v. Mellon, 152 Pa. St. 286.]'

"In this case the separate inheritances were created by deed of grant, whilst in the Snoddy case they were created by exception in the deed. But whether created by a deed directly granting the mineral estate, or by an exception in a deed granting the surface estate, there are created two separate and distinct estates. To the same effect is Wardell v. Watson, 93 Mo. l. c. 111. To our minds the words 'said premises' used in the judgment simply refer to what precedes, and only mean that restitution go for two-tenths of the separate mineral estate. In other words, it means the mineral premises as distinguished from the surface premises.

"The grant of the coal carries with it the use of the surface so far as is necessary to carry on mining operations. [Wardell v. Watson, 93 Mo. l. c. 111, and cases cited.]

"The word 'premises' as used in the judgment only goes to the mineral estate and things appurtenant thereto, and in this sense it is correct."

The Gordon-Park case is a part of the land covered by this Estes deed. I do not understand that the appellants now seriously challenge the law as to the divisibility of lands into two separate estates as discussed in the Park case, supra, but they do contend that the Estes deed upon its face is not broad enough to carry the mineral estate in these lands, and especially

in view of the fact that no mines have ever been opened and operated on these particular lands.

The words in dispute here as found in this deed are: "Coal mines situated on the east half of the southwest quarter of section sixteen." Respondents contend that the term "coal mines" as used in this deed means coal deposits under the surface of this land. Appellants would have us to restrict the meaning of the word in the deed to open or operated mines, and if not, then at least to such veins as were in fact open and exposed on the creek mentioned. In construing this deed the terms of the grant, if doubtful, must be construed most strongly against the grantor. Such a rule has met the approval of this court. [Bray v. Conrad, 101 Mo. 331.] It is also said in the cases that we should go to the four corners of the instrument and from the instrument as a whole determine its meaning and the intent of the parties.

*Estate Conveyed.*

Going therefore to the whole instrument for the meaning of the words "coal mines" we are of the impression that the term is used in the sense of "coal deposits, subject to being mined" rather than to open or worked mines. The deed is warranty in form, thus evincing the idea of creating a fee simple estate. Had the grantor desired to restrict his broad grant to a grant of mines then being open and operated on the land, by appropriate terms he could have done so. He did not do so, but chose a form of conveyance calculated to not only separate the fee in the land into two estates, i. e., the surface and the mineral estates—but to make each fee simple in character. It is urged, however, that there is a limitation by the use of the words "said mines are now showing themselves in the bed of the creek running through said described tract of land." We do not think so. We think that had there been an idea to restrict the deed to the particular veins of coal shown by the croppings in the creek, the

grantor would have made the limitation clear by add-
ing the word "as" to the clause above quoted. It
would have then read "*as* said mines are now showing
themselves," etc. It occurs to us that this clause in
the deed was used more to express the fact that there
was evidence of coal deposits under the land described,
rather than to place a limitation upon the mineral es-
tate conveyed. It is clear the deed did not refer to
open and operated mines. A cropping of coal in a
creek bed is not an open or operated mine. We find no
direct precedent covering a deed of this language. The
term "coal mines" has a varied meaning, and this
meaning must be gathered from the context of the in-
strument in which it is used, as well as the connection
in which it is used. As shown by authorities cited by
appellants it is sometimes used in the sense of opened
or operated mines. But we think the term, when used
in the proper connection, may mean "coal deposits,"
and in this latter sense we think it was used in this
deed. We shall so rule.

II.   Defendants rested their case upon the close
of plaintiffs' evidence. As another of the several ques-
tions clustering around the first question,
**Ejectment** i. e., that the proof failed to make a case
**as Remedy:** for plaintiffs under the petition, it is urged
**Defendant's**
**Possession.** that the proof fails to show possession of
the mineral estate in the defendants, and
therefore the remedy by ejectment fails the plaintiffs.
If by possession of the coal estates is meant that de-
fendants were not mining the coal, then the charge
would be true. There is no claim that defendants were
actually mining the coal and thereby in open and no-
torious possession thereof.

This suit was brought in 1907, and the only deed,
without the coal reservation, in their chain of title, is
the deed from Allen Park and wife to Mary E. Million
of date April 25, 1899. Under this deed the defendants

claim. They had no possession prior thereto. Their possession had not run ten years at the institution of this suit and hence the Statute of Limitations is not in the case. There is no evidence in the record that prior owners of the surface estate claimed both estates. There is evidence in this record that in digging a well on the land in dispute a vein of coal was discovered. There is evidence that when one of the plaintiffs spoke to defendants about their rights to the coal, they claimed a legal right to the whole property described in their deed. In other words, they said that there was no reservation of the coal in their deed and they claimed possession of the whole estate. They were at the time in the possession of the surface, but not using the coal. The evidence clearly shows that they were claiming to be in possession of everything from the surface to the center of the earth. The question then for our discussion is whether or not under these facts ejectment is the proper remedy for the plaintiffs. Had defendants conceded the legal title to the mineral estate, or rather coal estate, to have been in plaintiffs, and thereby denied their possession thereof, the question might be different. This they did not do. Had they done so, and then refused defendants the right to enter upon the surface for the purpose of using the conceded mineral estate, it might be a debatable question as to the remedy, a question we are not called upon now to decide. But defendants claimed to be in the possession of and to have the right to use all which their immediate deed attempted to convey. Under such claim, made prior to suit, as in this case, we think ejectment is the proper remedy to try the title to the estate in the coal mines created by the original Estes deed. Such estate is as much of an estate as was the surface estate after the separation by this deed. If the claims and conduct of defendants showed, as in our judgment they did show, that a claim of possession was made by defendants, under their deed, for both estates,

then ejectment will lie to try the title to such claimed possession. If defendants had never claimed all which was attempted to be conveyed by their deed, but had disclaimed any interest in the mineral estate, then plaintiffs would have been put on their proof to show possession of the mineral estate in the defendants at the time of instituting the suit. But the defendants did not see fit thus to plant their claims in this lawsuit. They proceeded below upon the theory of having the legal title as well as the possession of both the surface and all below the surface. By that theory they are bound here.

It must be remembered that the coal deposits, when separated by grant or reservation in a deed, are as much of an estate in lands as is the surface of the same lands. [Gordon v. Park, supra.] Not only so, but such an estate carries with it the right to use so much of the surface estate as may be reasonably necessary for the proper use of the mineral estate. The fact that plaintiffs might have sued under our old section 650, if it be conceded that such statute could have been invoked, does not destroy the right to sue in ejectment to recover an estate in lands if such estate is claimed to be in the possession of another.

Separate Estates.

But in this case the defendants claimed possession prior to suit of everything attempted to be conveyed by their deed. This includes the mineral estate, and having so claimed the possession prior to suit, and not having denied such claim at the trial, they are in a bad plight to here urge that there is no proof of their possession. The proof of their claim to possession is in the record and undenied.

III. It is further urged that there was no admitted, or proven, common source of title. It is true there is no admission in the record of a com-

Common
Source
of Title.
mon source of title.  It does appear from the record that the defendants are claiming by virtue of the deed we have above mentioned. The record does further show that their deed is not an independent instrument, but is only one in a chain of deeds, all of which get their strength and vitality from the Estes deed first herein set out.  It must be remembered that defendants make no claim of adverse possession under color of title in their answer.  Plaintiffs put in evidence all the deeds and these deeds prove a common source of title.  Had defendants by their pleadings indicated a different claim of title, the question might have been different.  I say might have been different, because we have divided somewhat upon the question.  See dissenting opinion in Howell v. Sherwood, 242 Mo. 513.·

It is sufficient to say in this case that the evidence adduced shows a common source of title, and when such a title is admitted or shown by the evidence, the plaintiff in a case need not go back of such common source.  The contention, therefore, that plaintiffs failed in making a paper title, because they did not go back further than the common source, is unavailing.

This we believe answers the crop of contentions suggested by us in the beginning.  The cause seems to have been well tried and the judgment should be and is affirmed.  All concur.