**GENERAL REFRACTORIES COMPANY, a corporation,**

**Gwynn Jost and Frances Jost, his wife, Plaintiffs-Appellants,**

v.

**William J. RAACK and Elizabeth Raack, his wife, Defendants-Respondents.**

No. 46958.

Missouri Court of Appeals, Eastern District, Division One.

May 22, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 9, 1984.

Application to Transfer Denied Sept. 11, 1984.

Eugene H. Buder, St. Louis, for plaintiffs-appellants.

William J. Raack, Clayton, pro se.

ROBERT R. WELBORN, Senior Judge.

Action for Declaratory Judgment and injunction regarding ownership of mineral (fire clay) rights. Trial court entered judgment for defendants on their motion for summary judgment. Plaintiffs appeal.

In 1955, defendants Gwynn Jost and Frances Jost were owners of land in Gasconade County, Missouri. By instrument dated February 1, 1955, the Josts leased to plaintiff General Refractories Company the right to explore for, mine and remove from their land all usable and merchantile fire clay. The lease provided for royalty payments to the landowners and included a provision whereby the lessee, upon the payment of all stipulated royalties within ten years might become the owner of the clay

in place, with the right to remove the same at any time thereafter.

General mined some clay for which it paid royalties. On January 25, 1965, it paid the Josts the balance of the royalties due on the clay remaining in place in four specified pits.

In April, 1965, the Josts conveyed the land to L.A. and Dorothy Clasquin. The deed recited that the conveyance was subject to the lease to General and excepted the mineral right accruing from the lease.

In 1968, General removed all of the clay from one of the four specified pits.

On February 8, 1969, the Clasquins conveyed the land to defendants William J. Raack and Elizabeth Raack, his wife. Before the purchase, a representative of General discussed with Mr. Raack the location of the clay pits on the land and told Raack that General planned mining from them in 1969. Mr. Raack voiced no objection at the time of the discussion, but on May 2, 1969, Raack sent the following letter to General, receipt of which was admitted.

"The undersigned and wife are the present owners of property located in Gasconade County, Missouri, formerly owned by Gwynn Jost and Frances Jost, his wife.

"It is our understanding that your company intends to enter upon and mine the aforesaid property under a purported mineral lease dated February 11, 1955, between your company and the aforesaid Gwynn Jost and Frances Jost, his wife.

"You are hereby notified that said lease is void and of no legal force or effect, and you are therefore further notified that any attempt by your company, or by anyone at your direction or on your behalf, to enter upon said property or to attempt to exercise any of the purported rights under said void lease, shall of necessity result in immediate suit for damages and injunctive relief."

There was no further activity relating to the mineral rights until October 29, 1981, when the Josts and General filed the present action in the Gasconade County Circuit Court, seeking a judgment that General was the owner of the clay in place on the land under its lease and that the Josts are the owners of other clay in place which might be incidentally removed in General's mining, and an injunction against the defendants' interfering with mining of the clay.

The defendants' answer asserted the defense of the ten-year statute of limitations (Section 516.010, RSMo), the ownership of the clay by adverse possession, laches and that the 1955 mineral lease was void by reason of the rule against perpetuities.

Both parties filed motion for summary judgment, establishing the facts as above set out. Neither party disputed the factual allegations of the other party's motion. The trial court overruled plaintiffs' motion and sustained defendants' motion based upon the ten-year statute of limitations. Judgment was entered on defendants' motion. Plaintiffs appealed.

In this court, appellants base their primary argument upon the assumption that a separate estate had been created in the minerals or clay prior to respondents' purchase of the land. Respondents do not dispute this assumption.

Upon that basis, appellants contend that the judgment below is erroneous because respondents' possession was of the surface only and did not extend to the underlying clay. Appellants contend that respondents undertook no activity regarding the clay that would entitle them to invoke the statute of limitations (Section 516.010, RSMo).

■ The appellants' reliance is upon the oft-stated rule: " * * * [A]fter title to the surface estate of land has been severed from title to the underlying mineral estate, title to the minerals cannot be acquired by adverse possession of the surface alone." Ann. "Acquisition of title to mines or minerals by adverse possession," 35 ALR 2d 124 (1954); Section 21, p. 154.

The rule relied upon by appellants has been recognized and applied in Missouri. *Manning v. Kansas & T. Coal Company,* 181 Mo. 359, 81 S.W. 140, 145 (1904); *Gordon v. Park,* 202 Mo. 236, 100 S.W. 621

(1907); idem. 219 Mo. 600, 117 S.W. 1163 (1909).

None of these cases involved a factual situation in which the surface owner, asserting title to underlying minerals, had explicitly and directly notified the minerals title claimant that his title was denied. In *Manning*, the surface owner relied solely upon possession for the period of limitation of the surface as possession of the underlying coal. The claim of title on such basis was denied. In *Gordon*, the surface owner claiming title to the underlying coal and his predecessors in title had worked a mine on the property. The decisive question in the case was whether or not the mine operation amounted to such possession as would result in adverse possession. On the first appeal, the judgment was reversed because of error in the defendants' instruction which would have made 10-year adverse possession coupled with a continual claim of ownership of the land sufficient for a finding by the jury in favor of the defendants. The court stated that " * * * the ownership or possession of the land was not in question." 100 S.W. 624.

Upon a second trial, the court, at plaintiffs' request, instructed the jury that they could find for defendants on their claim of adverse possession only if the defendants had had " * * * the actual, exclusive, continued, peaceable, and hostile possession of said coal for 10 or more consecutive years prior to the institution of this suit." 117 S.W. at 1165. The jury found for plaintiffs and the issue on appeal related to the use of the word "continued" in plaintiffs' instruction. The court held that defendants could not complain of the instruction. If they wanted further definition of the word, they should have requested it. 117 S.W. at 1166. Furthermore, defendants used the term in their instruction and, therefore, could not be heard to complain of plaintiffs' use of the term. Id.

On the first appeal, the court did quote from Barringer & Adams on the Law of Mines and Mining, p. 569: "The surface owners setting up the statute must establish a possession of the mine, as such,

independently of his possession of the surface. Such a possession must be actual, notorious, exclusive, continuous, peaceable, and hostile for the statutory period. * * * Actual possession is taken by the opening of mines and carrying on the mining operations." See 3 Am.Jur.2d, Adverse Possession, § 222, p. 318 (1962).

Literal application of this rule on the facts of this case would, as appellants contend, call for reversal of the judgment below. However, the reason for the rule should be examined in the light of the facts of this case. The matter of concern is the element of "actual possession" as one of the requisites for title by adverse possession. "Actual possession involves two things: a present ability to control the thing possessed plus an intent to exclude others from such control." 3 Am.Jur.2d, Adverse Possession, § 13, p. 92. In their petition in this case, the appellants allege:

"9. During the year 1969 and continuing to the present, Defendants have denied any interest of Plaintiffs in said land, and refused to permit Plaintiff corporation, its agents or assigns, to enter upon said land for the purpose of mining and removing said clay, and have fenced in their land and threatened to sue Plaintiff corporation, its agents and assigns, if any attempt were made by them to enter upon said land for said purposes."

Thus, by their petition, appellants have asserted that respondents not only had the ability to control the thing possessed, but that they actually did so and excluded appellants therefrom. Such allegations, coupled with the acknowledged notice which respondents gave appellants of the denial of their rights to the clay, were sufficient to permit a finding by the trial court that respondents had actual possession of the clay, without regard for whether or not they ever mined on the premises.

The respondents' actions and declarations to appellants were sufficient to have entitled appellants to bring an action in ejectment, at least as early as 1969, after the receipt of Raack's letter, but they took no action until 1981. See *Gordon v. Mil-*

*lion,* 248 Mo.S.W. 155, 154 S.W. 99, 102[4]–[5] (1913). The appellants acquiesced in the hostile claim of the respondents for more than ten years. The trial court properly sustained respondents' motion for summary judgment on the grounds that appellants' action was barred·by the 10-year statute of limitations. § 516.010, RSMo.

SNYDER, P.J., and STEWART, J., concur.