Louis A. Schmidt, Appellee, v. Frank P. Schmidt and Henry J. Schmidt, Appellants.
Frank P. Schmidt and Henry J. Schmidt, Appellants, v. Louis A. Schmidt, Appellee.

Gen. No. 9,019.

Opinion filed April 3, 1936.

C. E. McNemar, of Peoria, for appellants.

Bartley & Younge, of Peoria, for appellee.

Mr. Justice Dove delivered the opinion of the court.

Frank P. Schmidt, Sr. died intestate about the year 1910, leaving as his only heirs his three sons, Louis A. Schmidt, Frank P. Schmidt and Henry J. Schmidt, and one daughter, Freda Schmidt. He died seized in fee of a certain 49.75 acres of land, including the underlying coal, located in the north part of the East Half of the Southeast Quarter of Section Fourteen, Town Eight North, Range Seven East of the Third Principal Meridian in Peoria County, Illinois. This tract will be referred to herein as tract number one. Frank P. Schmidt, Sr. was also, at the time of his death, seized of the coal and mineral underlying an adjoining eighty acres of land on the west, which will be referred to herein as tract number two.

In 1915 the said Frank P. Schmidt, Henry J. Schmidt and Freda Schmidt, three of the four children of Frank P. Schmidt, Sr., conveyed their undivided interests in the surface of tract number one to their brother Louis, reserving, however, to the grantors, the underlying coal. By a mistake, however, the word grantees was used instead of grantors, but this error was afterward corrected in the partition suit hereinafter referred to. Shortly after the execution of the deed, the sister, Freda, conveyed to her three brothers, as tenants in common, all her interest in the coal underlying both tracts. By virtue of the death of his father and the foregoing conveyances Louis became the owner of the fee to the surface of tract number one and also the owner of an undivided one-third interest in the coal underlying both tracts.

Shortly thereafter, Louis drove an entry a distance of about 650 feet, on tract number one, down to the coal. The mouth of this entry was and is about 75 feet north and west of a public road known as Harrop road. In mining and removing the coal, Louis used a strip of ground running from the mouth of the entry to this public road. This strip of ground is approximately 75 feet wide and 75 feet in length, and upon it he erected a platform, scale house, scales, roadway, track and rails in order to operate cars from the mine entry.

About 1920, a dispute arose between the brothers. Louis A. Schmidt claimed to own not only the surface of tract number one, but also the coal under it, and thereupon Frank and Henry filed a bill against Louis for partition of the coal underlying both tracts. In this partition suit, a decree was entered which found and decreed that the parties were tenants in common of the coal underlying both tracts. Commissioners were appointed who found the coal not susceptible of division and appraised each tract separately. The

coal underlying tract number one was appraised at $6,360 and the coal underlying tract number two was appraised at $18,000. This report was approved and a decree of sale was thereupon rendered ordering the sale of the coal underlying tract number one, "together with the right of entering said premises and mining said coal," and also ordering the sale of the coal underlying tract number two, with the privilege of mining and removing the same at any and all times and with the privilege of sinking air shafts through the surface of the land. At the sale, Louis A. Schmidt was present and participated by bidding, but his brothers Frank and Henry outbid him and on October 25, 1921, the master in chancery, pursuant to the order and decree of the circuit court, made and delivered to Frank P. Schmidt and Henry J. Schmidt for the consideration of $31,625, the amount of their bid, a deed for the coal underlying both tracts. This deed conveyed all the coal underlying tract number one, which it described, and following the description is the following, viz.: "Containing 49.75 acres, more or less, together with the right of entering said premises and mining said coal." Then follows another paragraph as follows, viz.: "Also, all of the coal and mineral of every kind and description underlying that part of (describing tract number two), with the privilege of mining and removing the same at any and all times and also with the privilege of sinking air shafts through the surface of the land." It was in this partition suit that the deed from Frank P., Henry J. and Freda Schmidt to Louis A. Schmidt was reformed.

On November 8, 1921, Louis A. Schmidt filed his bill for an injunction against his brothers, Frank and Henry, the purchasers of all the coal underlying both tracts. In his bill he averred that he owned not only the surface of tract number one, but also the coal underlying that tract and that he was at that time

mining coal thereunder; that he had constructed an entry for 1,300 feet, and made other improvements, all at a cost of about $6,000 for the purpose of making practical the mining of said coal; that the mouth of said mine and mine entry is located some distance from the public highway adjoining said real estate; that said public highway constitutes the only available entrance to the surface of the lands; that the construction of the shaft into the entry and the installation of said equipment was completed before the entry of a decree in the partition suit reforming his deed; that after the completion of the partition proceedings above referred to, Frank P. and Henry J. Schmidt seized and appropriated unto themselves the shaft and entry and all equipment on and under the surface for mining coal, and that to prevent them from using said entry and equipment, he erected barriers and fences and they tore them down and their conduct constitutes a continuing trespass upon his rights and property. The defendants answered and the cause was referred to the master who found that the complainant had no right to interfere with or prevent the use and possession by defendants of the rails in the track leading from the public road to and into the mine, that the passage ways and facilities upon the surface of said real estate were reasonably necessary for the removal and marketing of said coal and that upon the construction thereof, the same became and were, and yet are, appurtenances to the estate then possessed by all the tenants in common in said coal and now possessed by the defendants under their master's deed, and that the complainant has no right to remove the same or interfere with the possession thereof by the defendants. The master therefore recommended the entry of a decree dismissing the bill. The master's report was thereafter, on November 8, 1922, approved by the chancellor and a decree rendered dissolving the pre-

liminary injunction theretofore issued and dismissing
the bill for want of equity at the costs of the complain-
ant. There was no appeal ever taken from this decree
and the defendants have continued to mine the coal
and operate the mine from the date of that decree,
November 8, 1922.

On March 6, 1934, Louis A. Schmidt filed the in-
stant complaint. In this complaint he alleged that he
was the owner of said tract number one, except that
his brothers, Frank and Henry, who were made de-
fendants, were the owners of the coal underlying said
tract. The complaint further alleged that by virtue
of the deed from the master heretofore referred to,
the said defendants acquired not only the title to the
coal underlying said tract number one, but also the
right to enter said tract one for the purpose of mining
the same; that in pursuance to the said master's deed
and the provisions of said decrees heretofore referred
to, the defendants entered upon the surface of said
tract number one, built a tipple and other top works
and proceeded to mine the coal thereunder. The com-
plaint further alleged that the defendants own tract
number two, which is adjacent and contiguous to tract
number one, together with the coal underlying the
same, and that the defendants have been mining the
coal underlying tract two and hauling the same
through the entry beneath the surface of tract number
one and have been using the shaft on tract number one
and the surface of tract number one for mining coal
from tract number two. It was further averred that
the defendants have a right to use the surface of
tract number one, plaintiff's premises, for mining coal
underlying tract number one, but not for mining the
coal under tract number two. The relief the plaintiff
sought was an injunction restraining the defendants
from using tract number one for the purpose of bring-
ing to the surface coal mined from tract number two,

and that they be restrained from maintaining any tipple or top works on tract number one except for the sole purpose of mining and removing coal still remaining under the surface of tract number one. The defendants answered and filed a counterclaim. In their answer they denied that they were using plaintiff's premises for any illegal or improper purpose, alleged that they had a right to enter the plaintiff's premises and remove not only the coal underlying tract number one, but also the right to remove the coal under tract number two. By their counterclaim they sought an injunction restraining the plaintiff from in any way interfering with them in and about the operation of their mine and along the entries and right of way thereto.

After the issues were made up, the cause was referred to the master in chancery, who took the evidence and reported his findings of fact and conclusions of law and recommended that the original complaint be dismissed for want of equity and that the defendant in the counterclaim, Louis A. Schmidt, be enjoined from interfering with Frank P. and Henry J. Schmidt in their mining the coal underlying both tracts or from interfering with their using the present entry and right of way in removing the coal from both tracts. To this report exceptions were sustained and a decree entered dismissing the counterclaim for want of equity and finding the equities for the plaintiff and enjoining the defendants from using or going upon the surface of tract number one for the purpose of mining, removing or bringing to the surface any coal or material taken from tract number two or from any other premises other than tract number one and from operating any tipple, top works or other improvements on plaintiff's land except for the sole purpose of mining and removing coal which may yet remain unmined underlying tract number one. From this decree this appeal has been prosecuted.

It is insisted by counsel for appellants that the cases of *Consolidated Coal Co. v. Schmisseur*, 135 Ill. 371, and *Schobert v. Pittsburg Coal & Mining Co.*, 254 Ill. 474, are decisive of the issues involved herein. In the *Schmisseur* case it appeared that the complainant Mary Ann Schmisseur had sold and conveyed the coal underlying her farm to the Schuremans and the contract of sale contained the following provision: "And for the purpose of enabling said Schuremans to sink pits or shafts and successfully remove said coal, said Schmisseur hereby leases unto them and to their legal representatives for the term of thirty-five years, (unless the said coal shall be sooner exhausted, in which event said lease and the right to mine said coal shall cease and expire,) certain portions of said farm, containing in all eleven acres," the contract then described said 11 acres. It further appeared that Schuremans sank a shaft, opened a mine and mined coal until they sold out to the Consolidated Coal Company which had purchased 100 acres of coal land adjoining the land of Mrs. Schmisseur. It further appeared that only about one-half of the coal under the Schmisseur land had been removed when the coal company commenced to mine the coal under this adjacent land, removed it through entries on the Schmisseur land and hoisted the coal so mined through the shaft and pit on her land. Thereupon Mrs. Schmisseur filed her bill to enjoin the coal company from transporting across or through her land or through the pit or shaft sunk upon her land any coal mined on lands other than hers. The hearing in the circuit court resulted in a decree enjoining the defendant coal company from using the pit and entries for any purpose except hoisting and removing coal mined under complainant's land. The Appellate Court affirmed this decree. The Supreme Court reversed the judgment of the Appellate Court and remanded the cause to the circuit court with directions to dismiss the bill.

The court held that by the contract of sale executed by Mrs. Schmisseur, she sold absolutely the coal under her land for a gross sum and under the terms of the contract the grantees and their assigns had 35 years in which to mine and remove the coal and that the contract contained no provision requiring the removal of the coal before the end of that period. The opinion then continues: "It is insisted, and with much force, that a court of equity should interfere, by way of injunction, to prevent appellant from using its entries and the pit and shaft upon the leased premises for the purpose of removing and delivering coal upon its adjacent lands, for the reason, as is alleged, that it is in violation of the contract and a breach of its conditions. Where a contract of leasing," continues the court, "is certain, and the use of the demised premises for a specified purpose is clearly fixed by the agreement of the parties, the appropriation of the premises to a use inconsistent with that for which they were demised will frequently afford ground for the interposition of a court of equity by way of injunction; and it is well settled, that whenever the use to which premises are sought to be appropriated is inconsistent with the purposes for which they were let, and the change will operate to the injury of the lessor, the aid of such court may properly be invoked. In respect of purely negative covenants annexed to or contained in contracts or leases, courts of equity will frequently interpose by injunction, and indirectly enforce specific performance of such negative covenants by prohibiting their breach: and it seems to be well settled, that where there is an express negative covenant, courts of equity will entertain bills for injunction to prevent their breach, although the same will occasion no substantial injury or though the damages, if any, be recoverable at law. This is upon the principle that the owner of land selling or leasing it may insert in his deed or

contract just such conditions and covenants as he pleases touching the mode of enjoyment and use of the land. . . . The provision in the contract under consideration, in respect of the leasehold interest is, simply, that it is granted for the purpose of enabling said Schuremans to sink pits or shafts and successfully mine and remove the coal conveyed to them by appellee. Unquestionably, appellee might, had she seen proper, have restricted the use of the land leased by express stipulation, and have required the lessees to covenant against any use she might have deemed antagonistic to her interests. She did not do so, and as we have seen, a court of equity cannot interfere to prevent the threatened use by appellant unless injury results for which appellee has no adequate remedy. As already said, appellant has the right to use the shaft, and the leased premises upon which it is located, for the term of thirty-five years from the date of the contract, for the purpose of mining and removing the coal under appellee's land, unless it shall sooner exhaust the same. It is not shown or pretended that the use of the entries through the mine in any way interferes with the use, occupation or enjoyment of appellee's land by her. By the sale and conveyance of the fee of the coal, appellee severed it from her estate in the land, and the right of her grantees or their assigns to use the estate thus granted by appellee in the coal, so long as her property is not interfered with or injured in any way, cannot be questioned. It is manifest that until the expiration of the term, or until appellant or its assigns shall exhaust the coal under appellee's land, appellee can have no right of re-entry in the mines or in the leasehold estate.'' The court then stated that it was not conceivable how the proposed use of appellant's mine and shaft could result in any damage to appellee and that at most her damages would be only nominal and as no irreparable

injury was shown as would justify the interposition of a court of equity, the bill should be dismissed.

In *Schobert v. Pittsburg Coal & Mining Co.*, 254 Ill. 474, the *Schmisseur* case was followed and it was there held that one who sells the coal underlying his land might by express stipulation forbid the mining of coal from adjacent lands through the tunnels made in the mining of coal under the grantor's land, but unless such restriction is expressly made, the grantor cannot enjoin the grantee or his assigns from using such tunnels in removing coal from adjacent lands. The *Schobert* case cited *Lillibridge v. Lackawanna Coal Co.*, 143 Pa. St. 293, and *Moore v. Indian Camp Coal Co.*, an Ohio case reported in 80 N. E. 6 and quoted with approval what was said in those cases to the effect that coal in place is a corporeal hereditament, the title to which passes in fee simple to the purchaser by apt conveyance and that when the coal is removed and there remains an empty chamber or space, the owner thereof is the party who owned the coal formerly therein and he may use such space as a way for the carriage of minerals from his adjoining lands; that the owner of the fee may create a separate mining right and if he does, he may protect himself by restrictions, but in the absence of express restrictions, the law recognizes that the ownership of the surface and the ownership of the underlying coal is separate and distinct and that the owner of the surface has no access to the space or chamber after the coal is removed and cannot use it and can be in no manner injured by the use of it by the owner thereof.

In *Westerman v. Pennsylvania Salt Mfg. Co.*, 260 Pa. 140, 15 A. L. R. 943, the *Schobert* case, *supra*, is cited and the Pennsylvania court quotes with approval from a note following the report of the *Schobert* case in 40 L. R. A. (N. S.) 826, where it is said: "It is generally held that a grantee of coal in place, with

license to mine and remove it, in the absence of express stipulation, may at any time, before the coal is all removed, use the underground passages opened for its removal for the transportation of coal from his adjoining lands,'' the opinion then continues: ''The rule is different in the case of a right of way upon the surface of land which is incorporeal and can be used only for the purpose specified in the grant,'' citing among other cases *Vogel v. Webber,* 159 Pa. 235, 28 Atl. 226.

In *Vogel v. Webber, supra,* it appeared that Mrs. Lewis and another were the owners of a certain tract of land and they conveyed to one Sutton the underlying coal, together with the free and uninterrupted right of way into, upon, and under said land as might be proper and necessary for the purpose of taking and carrying away the coal. Sutton conveyed his right and title to the coal to Weinmann, of whom Vogel was lessee. A pit was opened from which coal was taken and Webber became the owner of the surface of this tract, which was subject to the grant to Sutton. Weinmann also owned the coal underlying an adjoining tract and this he also leased to Vogel and Vogel claimed the right to take through the pit opened on the surface of the land, then owned by Webber, the coal underlying such adjoining land and to carry it to a public road over a way on the surface of Webber's premises. Webber denied that Vogel was entitled to so use the pit and the surface of his premises for such use and brought suit in trespass and recovered in the trial court. The Supreme Court affirmed the judgment of the trial court, and in its opinion said that Vogel's right to use the pit in question was by the terms of the grant or conveyance made by Mrs. Lewis; that the terms of this grant or conveyance confined and restricted the use of the pit to the coal lying beneath the tract of Webber; that the words of the grant

were clear and explicit and conveyed all the merchantable coal lying beneath the described premises, together with the free and uninterrupted right of way for the purpose of digging, mining and carrying away the said coal. ''Under these terms,'' said the court, ''appellant (Vogel) had no right to take through that pit coal from beneath the adjoining tract, except such as may possibly have been required as a part of the mining operation for the purpose of opening up an air shaft, and necessarily incident to the mining under appellee's (Webber's) tract. If appellant mined coal from beneath the adjoining tract, and carried it through the pit in question, he became liable for so doing. . . . By the terms of the grant to Sutton, he became the owner of the merchantable coal under appellee's tract, and was entitled to mine the same, but he had no right to mine upon other lands, and use the pit for such mining operations, because his grant expressly limits his right to the coal mined and lying beneath the tract in question. . . . In this case the appellant, as lessee, claimed the right to mine and take coal out of the adjoining tract through the pit on appellee's land, and over it, although his lessor had accepted the grant, which restricts the use of the pit and the right of way to the mining and hauling of the coal which underlies only the tract of appellee. The use of the pit and of the right of way was specially restricted to the mining and to the hauling of the coal under appellee's tract.''

*Hooper v. Dora Coal Mining Co.*, 95 Ala. 235, 10 So. 652, was a suit for injunction to restrain the defendant coal mining company from using the complainant's land for the purpose of loading and carrying away coal mined on lands adjacent to the complainants. The bill alleged, among other things, that the complainant was the owner of certain premises other than the underlying coal and the right to mine the same; that

the defendant company had opened a mine on said land and erected certain buildings thereon used for mining coal; that the company had ceased to mine the coal lying beneath the surface of complainant's land to any appreciable extent and had extended the openings of the mine to adjacent lands from which large quantities of coal are mined, using the plant upon complainant's land to load and transport such coal, not loading or transporting coal mined beneath the surface of complainant's land. A demurrer to the bill was sustained by the lower court and the Supreme Court of Alabama in reversing the decree of the trial court which dismissed the bill said: "The bill does not inform us whether the right of defendant to mine is by reservation in a deed to the surface, or by a grant of the minerals, the grantor reserving to himself the surface. But it is immaterial; the relative rights and duties of the parties are the same. It is well settled that where one person is the owner of the surface and another of the subjacent minerals, the surface is servient to the mining right as to the occupation and use of so much as may be reasonably necessary for the beneficial and profitable working of the mines. A reservation or grant of the minerals, severed from the ownership of the surface, carries with it the right to penetrate through the surface to the minerals for the purpose of mining and removing them. This includes the adoption and use of such machinery, methods, appliances, and instrumentalities as may be reasonably necessary and are ordinarily used in such business. . . . The right to use the surface, implied from the reservation or grant, arises from and ceases with the necessity of the case. When all the subjacent ore is dug and removed, and the mine exhausted, there no longer exists any necessity for the use of the surface. Without an express reservation or grant, the right to use the plant erected on the surface of complainant's

land for the loading and transporting of coal mined on adjacent lands does not exist. *Midgely v. Richardson,* 14 Mees. and W. 595.''

In 40 C. J. 1012, the author states that ''except to the extent that the right to use the surface of the leased premises in connection with adjacent mining operations is expressly granted or necessarily implied, a mining lessee cannot use his surface rights or privileges for the purpose of taking out minerals from other lands not owned by the lessor; nor has he the right to . . . use the openings and apertures on the leased land to mine adjacent lands not owned by the lessor.''

There is an exhaustive annotation as to the right of the owner of minerals under one tract to use the surface in connection with mining another tract in 48 A. L. R. 1406. The editor of the annotation there says: ''However true it may be that, in the absence of any provision to the contrary, the lessee or grantee of minerals in place, as the owner of the minerals and the space they occupy, to use the gangways and underground passages cut through his own minerals for the purpose of going to and removing minerals mined from other lands, he has no right, in the absence of agreement, express or necessarily implied, to the use of surface privileges for the purpose of such outside mining operations, inasmuch as the use of surface privileges for such purposes is not ordinarily deemed incidental to the rights granted, nor reasonably necessary to their exercise.''

In *Brasfield v. Burnwell Coal Co.,* 180 Ala. 185, 60 So. 382, it appeared that Brasfield leased certain lands to one Francis for a period of 20 years or until the coal and minerals were worked out, the lessor to receive a certain royalty per ton. Francis assigned his lease to the Burnwell Coal Company, which commenced to mine the coal from said lands. Thereafter the coal company leased other adjoining lands from

other parties, designated as the Bryan land, and began mining coal thereunder, but used for that purpose the opening, tipples and tracks which it had constructed on Brasfield's lands. Thereupon Brasfield instituted this proceeding to enjoin the coal company from using the surface rights of his lands for such purpose. In holding that the plaintiff was entitled to such relief, the court said: "He (the lessor) certainly has a right to object to the lessee's using the surface of his land in order to mine and market the coal in the Bryan land. He has made no contract to that effect, and it is not claimed that he has ever consented to such use of his lands. He did contract, agree, for the use of the surface of his land, in order to mine the coal in his land, but not to mine coal in other people's land. The lessee has no more right to use the surface of complainant's land for mining the coal from the Bryan land, than he would have to use the surface of the Bryan land for mining coal from the complainant's land. We do not think it possible to so construe the lease in this case as to confer the rights which the appellee contends for and is asserting over the protest of complainant."

The facts in the cases of *Consolidated Coal Co. v. Schmisseur, supra,* and *Schobert v. Pittsburg Coal & Mining Co., supra,* are distinguishable from the facts in the instant case. In those cases the owner of the surface had leased a certain portion thereof for a definite period unless the coal thereunder was sooner exhausted and did not restrict its use by any express stipulation and our Supreme Court held that in the absence of any such express stipulation forbidding the mining of coal from adjacent lands through the tunnels made in the mining of coal under the grantor's land that the grantor could not enjoin the grantee or his assigns from using such underground spaces or chamber for the transportation of coal mined from

adjoining lands. In the instant case the record does not disclose who owns the surface of tract number two, but appellee has been the owner of the surface of tract number one since 1915. From 1915 to 1921 appellee also owned an undivided interest in the coal underlying both tracts. Since 1921 appellee has had no interest in or title to any of the coal underlying either tract. Since October 25, 1921, appellants have been the sole owners of the coal underlying both tracts by virtue of the master's deed which they received on that date. Following the proper legal description of tract number one in this deed are these words: ''containing 49.75 acres, more or less, together with the right of entering said premises and mining said coal.'' Following the legal description of tract number two in this deed are these words: ''with the privilege of mining and removing the same at any and all times and also with the privilege of sinking air shafts through the surface of the land.'' Whatever rights appellants now have in the surface of tract number one were acquired by them by virtue of this conveyance and while the law is well settled that the surface of tract number one is servient to the right of appellants to penetrate through that surface for the purpose of mining the coal underlying tract number one and while the surface of that tract is also servient to the use and occupation of so much thereof as may be reasonably necessary to properly remove that coal, there are no cases to which our attention has been called that hold, in the absence of any express contract, that the surface of tract number one is servient to the right of appellants as the owners of the coal underlying tract number two to use the surface of tract number one to hoist, transport, unload and load coal underlying tract number two.

The only proper construction that can be given the words employed in the master's deed, so far as tract

number one is concerned, is that the grantees acquired the right to use the surface of that tract for the purpose of mining and removing the coal underlying that tract and the only proper construction that can be given to the words employed in the master's deed so far as tract number two is concerned is that the grantees acquired the right to use the surface of that tract for the purpose of mining and removing the coal underlying that tract. In the absence of an express grant, we are clearly of the opinion that the right to use the surface of tract number one for the purpose of hoisting, transporting, loading and unloading the coal underlying tract number two does not exist. If the contention of appellants is correct, then they could continue to acquire the coal underlying other lands adjoining either tract one or tract two in any direction and solely by virtue of the provisions of the conveyance of October 25, 1921 continue to use the surface of tract number one to mine all the coal underlying all such additional lands. There are no words employed in the decree or in the master's deed made in pursuance thereof which in our opinion would permit of such construction.

The decree of the chancellor is in harmony with the foregoing authorities and will be affirmed.

*Decree affirmed.*