## Flannery et al. v. Utilities Elkhorn Coal Co. et al.

March 19, 1940.

John W. Caudill, Judge.

.356

C. B. Wheeler, C. P. Stephens and Joe Hobson for appellants.
Combs & Combs for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

On September 23, 1890, John P. Mayo and wife executed and delivered to Walter S. Harkins a deed to all oil, gas and mineral rights in a tract of about 265 acres on Buck branch of Beaver creek in Floyd county, together with easements described in the deed as follows:

"The right to construct, maintain and keep in repair and operate any and all railroads, tramways, haulroads, canals, waterways, or coke ovens, dams or pipelines deemed necessary or convenient by the party of the second part, his heirs, vendees or assigns, to remove said products from said land as well as to remove the products taken out of any other land owned by the party of the second part, his heirs, vendees and assigns or from any land which they may hereafter acquire. Also the right to erect and maintain upon said land hereinafter de-

scribed, and to alter, repair and remove all houses, shops, buildings, tanks, derricks, stables, hotels, store and warerooms by the party of the second part deemed necessary or expedient for the cheap and successful operation, removal, conversion and reduction of the products in and under said lands hereby conveyed.''

The grantee by similar deed acquired all mineral rights and rights of easement in a number of other tracts of land in the same vicinity, including a tract of 150 acres owned by A. S. Crisp and a tract of 78 acres owned by Samuel Halbert. By mesne conveyance the Beaver Creek Consolidated Coal Company, a corporation, has succeeded to all rights, title and interest acquired by Walter S. Harkins under that deed. It in turn has by lease to the Utilities Elkhorn Coal Company, a corporation, conferred upon the latter the right to take coal and minerals from the land and to have and exercise all rights, privileges and emoluments granted under the original deed in developing, operating and removing the minerals from the land.

The Utilities Elkhorn Coal Company and the Beaver Creek Consolidated Coal Company brought this action in equity against A. B. Flannery and Mary Flannery, husband and wife, who by inheritance or by mesne conveyance are successors in title to the 265 acre tract. In their petition they set up the foregoing facts and allege that under its lease the Utilities Elkhorn Coal Company entered upon the land and opened mines thereon, constructed and took actual possession of coal hauling tramways thereon and transported and hauled coal over same to its tipple on the railroad; that in the operation of the mines and tramway it was both convenient and necessary that they have the use of tramways and adjoining lands on each side of the track to lines set out and described in their petition; that the defendants were claiming an interest in the strip or parcel of land hostile to plaintiffs' right, title and easements therein and were denying the right of plaintiffs to the entire width thereof and had and were continuously trespassing upon the right of way and obstructing plaintiffs in the use thereof and were threatening to and unless restrained and enjoined would continue to hinder and harass plaintiffs in the prosecution of their coal mining

business and the use of the tramway; that plaintiffs are entitled to judgment quieting their title to the whole of the strip of land for the uses, purposes and easements set out, and enjoining and restraining defendants from entering thereon or in any way interfering or obstructing plaintiffs' use thereof and that plaintiffs are entitled to be adjudged the right to use, inclose and fence the strip of land. They also asked that they be permitted to construct and maintain trolleys and telephone lines along such right of way and easements.

By answer defendants traversed the allegations of the petition and in a second paragraph alleged that they became owners of the Mayo tract in 1912 or the portion thereof subject to the mineral deed to Walter Harkins; that they had laid out a portion thereof for homestead and built a house thereon and fenced the yard; that in 1930, plaintiffs constructed a tramroad through the lands at great damage to the surface thereof and that plaintiffs do not now and never will need any more of the lands adjacent to the tramway; that by having constructed and operated such tramway plaintiffs are estopped to take up and convert to their use and purpose more of the land and that fencing the strip of land would unnecessarily limit defendants' right of ingress and egress to and under their land by cutting the farm into two different sections and also denied the right of plaintiffs to erect telephone and transmission lines over the land.

The issues were completed by reply traversing the affirmative allegations of the answer.

On final hearing it was adjudged in substance that plaintiffs were for the purposes of hauling and transporting coal from the mines on the Mayo boundary and other lands in the vicinity thereof entitled to take, use and occupy the strip of land described in the petition and in constructing and maintaining tramways, telephones, electric trolleys, transmission lines and other things incident to the mining and transportation of coal from such land as was necessary and convenient or by plaintiffs deemed necessary and convenience for such purposes; that defendants be forbidden, enjoined and restrained from obstructing plaintiffs in the construction of the telephone line which had been commenced since the filing of the action and that defendants be required

and enjoined to remove the gas supply lines referred to in the evidence from the right of way, except where it might be necessary to cross under same; that plaintiffs have the right of inclosing the right of way for the protection of its tramroad, etc., but in so doing they be required to make an opening and construct a crossing over the tracks reasonably necessary to defendants in the use and occupation of the land; that the temporary injunction against defendants be made perpetual; that plaintiffs have the right and are entitled to construct, erect, maintain and use land of defendants outside of the right of way and all houses, shops, buildings, etc., that might be deemed necessary or convenient for the cheap and successful operation and removal of coal and minerals in and under the land but that same would not be used in the mining of coal from any other lands.

Defendants are appealing from so much of the judgment as is adverse to them and plaintiffs have been granted a cross appeal from so much of the judgment as denied them the right to use houses, shops, etc., erected by them on the land in mining coal from any other land.

It is first argued by appellants that the judgment granting appellees additional right of way for the operation of the tramroad in question is not sustained by the evidence and the case of Collins v. Lackey Mining Company, 219 Ky. 31, 292 S. W. 1091, is cited. That case refers to and deals with the right granted under a mineral lease to erect buildings on the surface. It holds in effect that under such lease granting the right to use the surface deemed necessary and convenient in the mining operations, the lessee is the judge of the necessity or convenience and the owner of the surface will not be heard to complain unless the lessee exercises the power granted under the lease, oppressively, arbitrarily or maliciously. The same principle applies to the exercise of right of easement granted under a lease or deed for the construction and operation of tramroads, transmission lines, etc. See Pike-Floyd Coal Company v. Nunnery, 232 Ky. 805, 24 S. W. (2d) 614.

The evidence of appellees, including mining superintendents and engineers and two engineers not connected in any way with appellees, is to the effect that the right of way which has been asked for and granted

to appellees is absolutely necessary and convenient for the proper development and operation of the mines on this and adjacent lands and that same has been laid out in the most convenient and practical way. The right of way over the land of appellants was originally surveyed to run in front of their residence and there is evidence indicating that at their request a change was made and it was run in back of their residence but this necessitated a sharp curve and the evidence conclusively shows that because of this curve and the grade, loads of more than 18 cars would have to be cut at that point and additional trips made to haul in excess of that number. The right of way as now asked for and granted runs in front of appellants' residence and the evidence shows that this change is necessary in order to transport coal economically and with facility.

The evidence of appellants and their witnesses is to the effect that part of the right of way asked for is not necessary for the proper construction and operation of a tramroad in that in many places it is much wider than is reasonably necessary but evidence for appellees is to the effect that the width is necessary for the construction of trestles at some points and cuts on mountain sides at others; that in making these cuts it is necessary to have room for ditches on the upper side and footing for fills on the lower side which requires the width of right of way asked for at such points. On this issue there is a sharp conflict in evidence, however, there is much evidence of a substantive and probative character that the right of way was both necessary and convenient for the proper development and operation of appellees' mines and the transportation of the products therefrom.

If in fact the preponderating weight of the evidence is not in accord with the chancellor's finding on this phase of the case, then, as is plainly manifest, the evidence for appellants does nothing more than raise a doubt concerning its correctness and therefore under a well established and recognized rule the appellate court would not be authorized to disturb that finding.

It is next argued that the mineral deed on which appellees rely does not grant any right to construct telephone or transmission lines. It is true that no such right is specifically mentioned in the deed but the right is granted to construct and operate a tramroad. Elec-

-tric power has now come into common use for the opera-
tion of such roads and the right to operate such roads
necessarily includes all rights incident to or necessary
for that purpose; and no additional right of way is re-
·quired for the transmission lines. Appellees were given
the right to construct telephone lines along and on the
poles of the transmission lines and therefore are not
·casting any additional burden upon or in any way in-
terfering with appellants' right to the use of the sur-
face. We would not be understood as holding that ap-
·pellees under their deeds or lease would be entitled to
additional or extra right of way for telephone lines but
·conclude that they do have a right to maintain their
transmission lines and telephone lines on and along the
right of way of their tramroad. See Himler Coal Com-
·pany v. Kirk, 205 Ky. 666, 266 S. W. 355; Marvin
v. Brewster Iron Mining Co., 55 N. Y. 538, 14 Am. Rep.
322.

It is further agreed that the mineral deed conveyed
·no right to transport over appellants' property coal
mined on other lands owned or hereafter acquired by
them, or either or both of them, but the mineral deed
itself gives to the grantees and to his heirs, vendees and
·assigns such right and appellants acquired title to the
surface burdened therewith and they are therefore
·bound by the terms of the deed.

On cross appeal appellees are insisting that the
·court erred in adjudging that they could only use build-
ings, shops, etc., erected by them on the land in connec-
tion with mining thereon; but by the terms of the deed
·under which they are claiming they are clearly so re-
·stricted with respect to the use of the buildings, etc.
The deed as above indicated does give them the right
to transport coal mined from adjacent lands on this tract
. but their right to the use of the buildings erected on the
land is not so broad and comprehensive and the judg-
·ment of the chancellor in that respect is in strict con-
formity with the terms of the deed.

Wherefore the judgment is affirmed on both the
·original and cross appeals.