Dall B. GROVES, Individually and as Executor of the Estate of Elizabeth B. Groves, Deceased, Respondent,

v.

TERRACE MINING COMPANY, a Corporation, Appellant.

No. 47732.

Supreme Court of Missouri,

Division No. 2.

Nov. 14, 1960.

Motion for Rehearing, for Modification of Opinion or to Transfer to Court En Banc Denied Dec. 12, 1960.

Samuel Richeson, Dearing, Richeson & Weier, Hillsboro, for appellant.

Thurman, Nixon & Blackwell, J. W. Thurman, Jeremiah Nixon and Earl R. Blackwell, Hillsboro, for respondent.

STOCKARD, Commissioner.

Appellant has appealed from a judgment in the amount of $7,563.07. Jurisdiction is in this court because the appeal was taken prior to January 1, 1960. Gooch v. Avsco, Incorporated, Mo.Sup., 337 S.W.2d 245.

On August 15, 1946 Dall B. Groves and his mother, owners of a tract of land known as the Old Mines Place, executed a "Mining and Mineral Lease" to Terrace Mining Company "for the purpose of exploring for, mining, taking out, and removing therefrom merchantable barytes ore," with the right of the lessee "to make all excavations, openings, ditches, drains, roads, and other improvements upon the said premises which are or may become necessary or suitable for the mining, cleaning or processing and removing of barytes ore, and other associated ores and by-products from said premises, * * *." The lease provided that the lessee was to pay 60 cents per ton "for all mined barytes ore," and it further provided that "in the event that lessee obtains ores from other lands, lessee may use the mills on the premises herein leased to pour such ore by paying lessor 20 cents per ton of finished product therefor." There is no explanation by the parties of the term "to pour such ore," but in the trial and in their briefs they have treated it as referring to the processing of ore. Lessee also agreed that "sufficient barytes ore" shall be mined each and every year "from the said premises" to pay a royalty therefor not less than $300 annually, and in any year for which the royalty was less than that amount lessee was to pay as "lease rent" the sum of $300 in lieu of the royalty. The other lease provisions are not material to the issues on this appeal.

On May 1, 1950 Dall B. Groves and his mother executed and delivered to Florin Wallace Floyd and Julia Elizabeth Groves Floyd a general warranty deed to the Old Mines Place conveying to them all their interest therein except as retained pursuant to the following reservation: "Excepting and reserving to grantors all mines, barytes and all other minerals and all oil and gas under said premises hereby conveyed with power for grantors their heirs and assigns to take all usual necessary or convenient means for working, getting and processing the same."

Dall B. Groves was a director of Terrace Mining Company, and was also its president, treasurer and general manager in sole charge of its operations. He served in those capacities from 1946 until September 1, 1957, when because of a dispute with Florin Wallace Floyd (who with his wife, a sister of Dall B. Groves, were the majority stockholders) over the question of whether the lease had terminated he was relieved by the stockholders of all such positions with appellant except that of director.

On November 30, 1957 the pending suit, in two counts, was filed by Dall B. Groves. His mother died after the suit was filed, and Dall B. Groves as executor of her estate was added as a party plaintiff. By the first count recovery was sought (as limited by the verdict directing instruction) for "royalty or rentals" in the amount of $7,563.07 accrued under the lease for processing in the mill on Old Mines Place during 1951

through 1957 ore obtained from other lands, and for the sum of $900 as rent in lieu of royalties for the years 1955 through 1957. The verdict on this count was in favor of lessors in the amount of $7,563.07. No mention or issue is made on this appeal concerning the failure of the jury to award any rent in lieu of royalties. By the second count damages were sought in the amount of $30,000 for the alleged failure of appellant to continue mining operations on the Old Mines Place while barite was commercially available. The verdict of the jury on this count was for appellant, and the appeal taken by respondents from the judgment entered on this count was subsequently dismissed.

The "Mining and Mineral Lease" executed by Dall B. Groves and his mother to appellant was a transfer of two distinct and separate rights or interests. First, it constituted a usual mineral lease giving to appellant as lessee the right to enter the land and take therefrom barytes ore and other associated ores and by-products and to use such parts of the surface necessary for such operations. Title to the ore in the ground was not thereby conveyed to the lessee, but the lessee received the right to convert the barytes ore to personalty and dispose of it. Austin v. Huntsville Coal & Mining Co., 72 Mo. 535, 37 Am.Rep. 446; Thacker v. Flottmann, Mo.App., 250 S.W. 2d 810; Providence Min. & Mill Co. v. Nicholson, 8 Cir., 178 F. 29; 58 C.J.S. Mines and Minerals § 151. For this use of the premises provision was made for a royalty based on the amount of the minerals taken therefrom. Second, it granted to the lessee the right to use the surface of the land "to pour" or process ores obtained from lands other than the leased property. For this use a different and additional royalty was provided. This use by the lessee was not authorized by reason of the grant of the right to take minerals from the land (with the right to use the surface for that purpose and to process that ore), and for the lessee to have this additional right a specific provision therefor was necessary.

White v. Bevier Coal Co., 364 Mo. 313, 261 S.W.2d 81; Russell v. Texas Company, 8 Cir., 238 F.2d 636, 642; Moore v. Lackey Mining Co., 215 Ky. 71, 284 S.W. 415, 48 A.L.R. 1402; 36 Am.Jur. Mines and Mining §§ 170, 180, 181; Annotation 48 A.L.R. 1406.

The owner of land containing minerals may segregate the surface rights from the underlying minerals by a conveyance in writing so that there is a complete severance of title and separate estates are created. 58 C.J.S. Mines and Minerals § 151; Bostic v. Bostic, 199 Va. 348, 99 S.E. 2d 591, 66 A.L.R.2d 971; Carlson v. Lindauer, 119 Cal.App.2d 292, 259 P.2d 925. This may be done by a conveyance of the land with an express reservation of the mines and minerals, Gordon v. Million, 248 Mo. 155, 154 S.W. 99; 58 C.J.S. Mines and Minerals § 152, and the separate estate in the mines and minerals thus created in the grantor is the same as though there had been an express grant thereof to him. Wardell v. Watson, 93 Mo. 107, 5 S.W. 605. This was the effect of the warranty deed and the reservation therein. Prior to the execution of the warranty deed, Dall B. Groves and his mother were the owners of both the surface rights and the mineral rights in the Old Mines Place subject to the right of appellant for the remainder of the term of the lease to mine for barite and use the surface for that purpose and to process the ore removed therefrom, and also subject to the right of appellant "to pour" or process ore thereon which was obtained from other lands. When respondents executed the warranty deed, the interest conveyed to the Floyds was subject to the lease for the remainder of its term, and if there had been no reservation in that warranty deed the Floyds would have succeeded to all the interest and rights of respondents under the lease. Goodson v. Comet Coal Co., 182 Ark. 192, 31 S.W.2d 293; 58 C.J.S. Mines and Minerals § 193c(1). However, since the respondents did make a reservation and thus segregate the surface estate from the mineral estate the royalties ac-

cruing thereafter are apportionable among the owners according to their respective interests. 58 C.J.S. Mines and Minerals § 193c(1); United Feldspar & Minerals Corporation v. Bumpus, 141 Me. 7, 38 A.2d 164. It is obvious that by reason of the reservation, Dall B. Groves and his mother intended to and did retain what is generally known as the mineral rights or the ownership of the minerals, and as owners thereof they would be entitled to the benefits of the existing lease in the form of royalties resulting from the mining or taking from the premises by the lessee of any barytes ore or other minerals. But the grant or reservation of the mineral estate, with the implied or expressly stated right to use the surface for the removal and processing of minerals taken from the land did not carry with it the right to use the surface estate for the processing of minerals obtained from other lands. White v. Bevier Coal Co., supra; Russell v. Texas Company, supra; Ross Coal Company v. Cole, 4 Cir., 249 F.2d 600, 605; Chafin v. Gay Coal & Coke Co., 109 W.Va. 453, 156 S.E. 47; Schmidt v. Schmidt, 284 Ill.App. 623, 1 N.E.2d 419; Rose v. Martin, 310 Ky. 193, 220 S.W.2d 385; Flannery v. Utilities Elkhorn Coal Co., 282 Ky. 355, 138 S.W.2d 988; Moore v. Lackey Mining Co., 215 Ky. 71, 284 S.W. 415, 48 A.L.R. 1402; Middleton v. Harlan-Wallins Coal Corporation, 252 Ky. 29, 66 S.W.2d 30; 36 Am. Jur. Mines and Minerals §§ 179 and 180; 58 C.J.S. Mines and Minerals § 159b; Annotation 48 A.L.R. 1406. Therefore, unless by reason of the language of the reservation it can be said that in addition to the mineral rights (and the right to use the surface estate for obtaining and processing the minerals reserved) respondents also reserved the right to use the surface estate for the processing of ore from other lands, and thereby reserved the right to royalties under the lease from this activity, that right (with the right to receive the royalties) was transferred by the warranty deed to the Floyds.

Respondents contend that such a right was reserved by the use in the reservation of the words "all *mines* * * * with power for grantors * * * to take all * * * means for working and processing the same." The contention is that "The barites and other minerals in place, the pits and other excavations opened for mining of barite, the washer plant, the roads, the settling basin, the clear water pond, and the machinery and mill used in mining and processing the barite ore all constituted a 'mine' within the meaning of the reservation in the deed." This contention places a broader meaning on the word "mines" than we have found approved by any case. In Gordon v. Million, 248 Mo. 155, 154 S.W. 99, 101, the grant in a deed of "Coal mines" was held to mean "coal deposits under the surface of [the] land." However, there the issue was whether the grant was only to the coal mines already opened or whether it included a grant of the coal minerals. The word "mines" is not a definite term, but its meaning must be determined from the circumstances of its use. In a "broad or enlarged sense," the term "mine" denotes the vein, lode, or deposit of mineral, and is also used to denote the place where, or the parcel of land on which, such mineral vein or deposit is found. In this sense it is a certain part of the soil or of the earth's surface in which there are mineral deposits and in which a person may obtain not only a full right of ownership of the soil, but a right to remove the minerals therefrom and to dispose of them. 58 C. J.S. Mines and Minerals § 1a; Jones v. Vermont Asbestos Corporation, 108 Vt. 79, 182 A. 291; Ozark Chemical Co. v. Jones, 10 Cir., 125 F.2d 1; People v. Silver, 16 Cal.2d 714, 108 P.2d 4. However, in its "primary and restricted meaning" it usually refers to underground excavations and open workings where minerals or deposits are obtained. 58 C.J.S. Mines and Minerals § 1b; Certain-Teed Products Corporation v. Comly, 54 Wyo. 79, 87 P.2d 21. Whether we adopt respondents' definition of the term

"all mines," or whether we use either the broad or restricted meaning above set forth, the result is that respondents reserved to themselves the mines and minerals on the Old Mines Place with the right to operate those mines (and to such extent necessary to use the surface estate) to obtain and process the minerals obtained from the land, but not the right to bring ore onto the surface estate from other lands to be processed there. Since the grantors of the warranty deed did not reserve this right they transferred it to the Floyds, and as owners thereof the Floyds were entitled to the royalties provided for in the lease for the exercise of that right. We have found no case, and none has been cited to us, where a grant or reservation of "all mines" separate from the surface estate carried with it the right to use those mines to process ore from other land. We conclude that respondents were not entitled to the disputed royalties.

We have examined carefully all the cases cited by respondents, and find they are not in point. We shall refer specifically to but one, Lennox v. Vandalia Coal Co., 66 Mo. App. 560, because it is respondents' contention as stated in their brief that "this case squarely rules the issues here involved." In the Lennox case the owner of land entered into a lease for a period of twenty years, but it was also provided that the lease was to expire when the workable coal was exhausted if that occurred earlier. A royalty was provided for based on the amount of coal mined from the premises with a minimum amount of $50 per month. By the express terms of the lease the coal company could process and handle coal on the leased land which had been mined from other land, but apparently no royalty for this use was provided. Prior to the twenty-year period the workable coal was exhausted, but instead of declaring the lease terminated and surrendering possession of the land, the coal company insisted that for the remainder of the twenty years it could continue to process coal on the leased property without paying the mini-

mum of $50 per month. The court held that the coal company could not continue to hold the land under the lease contract and avoid the minimum payment therein provided. The facts of that case are not comparable to those of the present case, and the ruling there does not in any way conflict with the ruling here.

In view of our conclusion that respondents transferred to the Floyds their rights under the lease to receive the royalty payments for the use of the surface estate to process ore from other lands, respondents were not, as a matter of law, entitled to recover those royalties, and that issue should not have been submitted to the jury. The judgment entered on Count I of the petition is reversed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.