**Norma ROARK, Appellant-Plaintiff,**

v.

**Arlo GUNTER, Respondent-Defendant.**

No. 24387.

Kansas City Court of Appeals.

Missouri.

April 4, 1966.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 6, 1966.

Allan R. Browne, Ennis, Browne & Martin, Edgar J. Keating, Kansas City, for appellant.

Roy Larson, Jr., Sprinkle, Carter, Sprinkle & Larson, Kansas City, for respondent.

SPERRY, Commissioner.

This case was transferred to this court by the Supreme Court, Roark v. Gunter, 391 S.W.2d 258.

It comes to the writer of this opinion on reassignment.

Plaintiff, while a passenger in an automobile, received severe personal injuries when the vehicle in which she was riding was struck as a result of a collision between an automobile being operated by the above named defendant and one being operated by George R. Davis. Plaintiff sued both operators for the sum of $25,000.00. She had a verdict against Mr. Davis in the sum of $16,250.00 but, on order of the court, remitted $4,000.00 thereof. The amount of the judgment was $12,250.00, from which no appeal was taken. The verdict was for defendant Gunter. Plaintiff appeals as to Gunter. We will refer to the various parties involved as plaintiff, Gunter, and Davis.

The only points presented on this appeal concern the propriety of the giving of certain instructions for Gunter. The trial began on March 9, 1964. MAI were not used. The pertinent facts in evidence must be set out fully and, in reviewing the case, we will view the evidentiary facts, and the inferences to be drawn therefrom, from a standpoint most favorable to Gunter's theory.

Plaintiff pleaded that the collision occurred at about 3:00 P. M., August 21, 1961, while the automobile in which she was riding was proceeding eastward, in the south (outside) traffic lane, of 12th street, in Kansas City, Mo., in the intersection with Washington street, a north-south street; that Davis was proceeding east on 12th and was making a left hand turn into Washington; that Gunter was driving an automobile west on 12th, in the intersection, and that Davis and Gunter negligently caused their automobiles to collide in the intersection, knocking the Davis vehicle into violent collision with the vehicle in which plaintiff was a passenger, thereby causing plaintiff to suffer severe personal injuries.

Gunter pleaded a general denial and admitted that he was proceeding at the time and place alleged by plaintiff; that Davis was operating his automobile at the time and place alleged by plaintiff; and that Davis was then making a left hand turn in front of Gunter. He denied any negligence on his part.

Davis answered, admitting the date of the accident and the public nature of the streets involved. He admitted the negligence of Gunter and denied every other allegation contained in plaintiff's petition.

It was shown in evidence that the lawful speed on both 12th and Washington, was 25 miles; that 12th is an east-west street, 36 feet wide with a line along the center; that it was capable of carrying two lanes of traffic, each way; that Washington is a north-south street 46 feet wide, limited to one way traffic.

The plaintiff was riding on the right hand side, front seat, of an automobile operated by her husband. Mr. Roark testified to the effect that he was proceeding eastward on 12th street, in the lane next to the curb; that the Davis car was slightly ahead, next to the center line; that there were no vehicles parked on the south side of 12th; that, as he approached Washington, it was raining and he was proceeding

at a speed of 10 to 15 miles per hour; that the light was red when he reached Washington; that both his car and that of Davis stopped, side by side; that the Gunter car came over a rise two hundred feet east and, as the light changed to green, came through the intersection at 30 to 35 miles per hour; that it was travelling in the lane next to the center line; that, when the light changed, he, Roark, entered the intersection and was proceeding eastward at a speed of from 5 to 10 miles per hour, at the same time the Davis car entered and immediately began a slow left turn into Washington, with turning lights on; that, when the Davis car was at an angle, not having completed the turn, the Davis and Gunter cars collided; that the left fronts of the cars came together, at an angle; that the front of the Davis car was caused to move to the west, causing its right rear fender to strike the Roark car between its left front fender and front door, swinging it around with the Davis car, so that its left front came in contact with the right front of the Davis car; that the Gunter car did not strike the Roark car; that the Gunter car did not swerve or sound a signal as it came through the intersection; that the Davis car was proceeding at from 5 to 6 miles per hour immediately prior to the collision.

Plaintiff's testimony corroborated that of her husband.

Cpl. Whitney, Kansas City police, arrived at the scene shortly after the collision occurred. He stated that the Davis and Gunter cars collided at a point 5 feet east of the west curb line of Washington and 20 feet north of the south curb line of 12th; that the left front of both cars came together and were damaged; that, when he arrived, the Davis car was headed northeast and the Gunter car was headed west; that they were 4 feet west of the point of impact; that the speed limit at this intersection is 25 miles per hour and Washington is 46 feet wide. He learned of no witness to the collision.

Davis stated that, as he approached and entered the intersection, the light turned green; that his speed was from 5 to 10 miles per hour; that he began a "rolling" left turn into Washington; that he saw the Gunter car, which was travelling at 30 miles per hour; that he slowed and was practically stopped; that his vehicle was struck in the rear by the Roark car and was knocked forward into the path of the Gunter car; that he could have stopped within a foot or two but for the blow from the Roark car; that the collision with Gunter occurred 2 or 3 feet north of the center line of 12th; that the Gunter car approached in a straight line and did not swerve; that the front of his car was a foot north of the center line of 12th when struck by the Roark car; that he first learned of an eye witness to the collision on Sunday night, prior to the trial.

Mr. Dickman stated that he was standing on the sidewalk at the northeast corner of the intersection and saw the collision; that he did not tell anyone that he saw it until Sunday night, prior to the trial, when Davis' attorney called him by long distance; that he saw the Roark car enter the intersection from the west, after the Davis car was in it and was turning left; that the Roark car entered the intersection behind the Davis car when the latter was slowing or stopping for a left turn; that it hit the rear end and knocked it several feet forward in front of the Gunter car, which was approaching, and which did not swerve. Apparently, the jury was not greatly impressed by this testimony regarding a rear end collision, because it awarded a verdict in favor of plaintiff and against Davis.

Gunter stated that he was driving his automobile west, on 12th, in the inside lane, 2 or 3 feet north of the center line; that, as he approached the intersection, the light turned green and he entered; that his speed was from 15 to 20 miles per hour; that there were no cars ahead travelling west; that, as he entered the intersection, the Davis car entered it from the west, with its left side 4 feet south of the center line;

that, as Gunter entered, the Davis car cut to the left; that Gunter hit his brakes and, at that time, the Davis car "lurched" forward several feet into Gunter's lane; that Gunter skidded his wheels 12 feet; that the force of the collision, which occurred 8 to 10 feet east of the west curb of Washington moved his car 2 feet north; that, after the collision, the front of the Gunter car was 4 feet east of the west curb line of Washington and to the north of its position prior to the collision; that Davis was making his turn at 10 miles per hour; that he did not hear, at the scene of the collision, that the Davis car was rear ended; that, after the collision occurred, the Roark car was in the south lane of traffic, from 8 to 10 feet east of the Washington curb line.

Plaintiff claims instruction No. 6 given for Gunter, is fatally erroneous. It provides as follows:

"The court instructs the jury that if you find and believe from the evidence that at the time and place mentioned in evidence Defendant Gunter was operating his automobile west-bound on 12th street in the lane next to the center line and that Defendant Davis was operating his automobile east-bound on 12th street in the lane next to the center line, if so, and if you find and believe that as the Defendant Gunter approached and entered the intersection of Washington street, the Defendant Davis' automobile turned left into the lane and path of the Defendant Gunter automobile, if so, and if you find that at that time the Defendant Gunter applied his brakes and skidded into collision with the Defendant Davis automobile, if so, and if you further find and believe from the evidence, that the Defendant Gunter in the exercise of the highest degree of care was unable to avoid coming in contact with the Defendant Davis' automobile, and if you find that in operating his automobile as aforesaid the Defendant Gunter was not negligent, then you are instructed that your verdict shall be in favor of Defendant Gunter".

Plaintiff's instruction No. 2 provides, in part, as follows:

" * * * and if you further find that said negligence, if any, of defendants consisted in this:

"As to Defendant Gunter, that he operated his motor vehicle at said time and place in excess of the speed limit, and failed to exercise the highest degree of care to give a reasonably adequate warning of his approach, to other vehicles approaching and in said intersection, if so, and thereby failed to exercise the highest degree of care in the operation of his said vehicle, if so; as to Defendant Davis, that he failed to exercise the highest degree of care, if so, to keep and maintain a reasonably good and sufficient lookout for other vehicles and failed to exercise the highest degree of care in the operation of his vehicle at said time and place, if so, by *suddenly and unexpectedly,* if so, without exercising the highest degree of care to give a reasonably adequate warning, if so, turning left at said intersection; and if you find that such failures, if any, by defendants, were negligence, and directly caused injuries, if any, and damage, if any, to plaintiff, Norma Roark, then it becomes your duty to find for the plaintiff, Norma Roark, and against both defendants". (emphasis ours).

■■ Since the Verdict was for Gunter we must accept all evidence favorable to his theory of defense. He was entitled to an instruction submitting his theory notwithstanding it may conflict with plaintiff's instruction and with its evidence offered in support. Thurman v. St. Louis Pub. Serv. Co., (Mo.), 308 S.W.2d 680, 684; Highfill v. Brown et al. (Mo.), 340 S.W.2d 656, 661, 92 A.L.R.2d 861. Plaintiff says instruction No. 6 is in conflict with plaintiff's instruction No. 2 and ignores the issues of negligent speed and failure to warn of intention to drive through. Under Gunter's evidence his speed was well under that prescribed by ordinance and he had no warning of impending danger until the Da-

vis car cut into his lane of travel and suddenly moved forward several feet. At that time, he stated, he braked and skidded his car. There was *no* evidence tending to prove that there was any danger until suddenly Davis entered the eastbound traffic lane, and no evidence that speed caused the collision. This is true under Gunter's theory and evidence, and it is not controverted except that Roark stated Gunter's speed was 30 to 35 miles per hour. It is not a converse instruction but it is based on Gunter's theory and is supported by his testimony, and by Davis' evidence that his automobile was suddenly *knocked* in front of Gunter's car.

■ It is said that the instruction is erroneous in that it prevents the jury, by omission, from considering reasonable inferences to be drawn from the evidence, particularly Gunter's failure to warn, and Gunter's excessive speed. The evidence does not tend to show that the accident could have been avoided if Gunter had slowed, or swerved, at that time, so as to avoid the collision. Nor were there facts in evidence from which it appears that the collision might have been avoided by a warning signal given after the danger appeared. Both drivers were watching each other until the collision occurred. Gunter's theory and evidence was that there was no sign of danger until the Davis car suddenly moved into his path across the center line of 12th street. Davis' evidence is corroborative of that fact, and instruction No. 2 predicates a verdict against Davis on a sudden movement into Gunter's lane of travel. The jury was required to find that Gunter was in the exercise of the highest degree of care and was not negligent.

■ Plaintiff also alleges error in the instruction because it prevented the jury from considering the evidence *and reasonable inferences deducible therefrom.* The court gave its instruction No. 1 (No. 2.01 MAI) which provides, in part, as follows:
"* * *

"No. 4. It is your duty to determine the facts and to determine them from the evidence and the reasonable inferences arising from such evidence, and in so doing you must not indulge in guesswork or speculation.
"* * *".

In view of the wording of instruction No. 6 and of the giving of instruction No. 1, no prejudicial error was committed.

■ It is contended by plaintiff that the instruction is erroneous because "it is completely silent as to the degree of care" required by Gunter. She cites Jolley v. Lowe, (Mo.), 362 S.W.2d 741, 743, which was a converse instruction given in a humanitarian case. The court struck it down because it fixed *no* standard of care required of defendant. It is not controlling here because instruction No. 6 required a finding that Gunter, in the exercise of the highest degree of care, was unable to avoid the collision and that he was not negligent in the operation of his automobile. It is also criticized on the grounds that it over-emphasizes Gunter's side of the case. We believe that it fairly submits his theory of defense and is not erroneous as laying down a *personal* test of Gunter's duty. Such would be a strained construction of the language, and is highly technical, and is not justified in this case. It is unlike the instruction discussed in Dixon v. General Grocery Co., (Mo.), 293 S.W.2d 415, 431, cited by plaintiff, and that ruling is not controlling here.

■ Plaintiff contends that Gunter's instruction No. 7 is prejudicially erroneous. That instruction is as follows:

"The court instructs the jury that no vehicle shall be turned left across the roadway when any other vehicle is approaching where the same may create a traffic hazard. Therefore, if you find and believe from the evidence that at the time and place mentioned in evidence, the Defendant Davis turned his automobile to the left across the roadway and into the path of the Defend-

ant Gunter's automobile, *at a time when the Gunter automobile was approaching from the opposite direction in such close proximity as to constitute a hazard, if so,* and if you find that in so doing, the Defendant Davis was negligent, if so, and if you find and believe that such negligence was solely and directly responsible for the plaintiff's injuries, if any, and if you further find that the Defendant Gunter was not negligent as outlined in other instructions, then your verdict must be for Defendant Gunter". (emphasis ours).

Plaintiff contends that it is erroneous because it refers to the alleged non-negligence of Gunter "as outlined in other instructions". We have ruled this point in our discussion of instruction No. 6.

■ It is said to incorrectly state the law by use of the word "hazard" in lieu of "immediate hazard" as it appears in Section 304.021 RSMo 1959, V.A.M.S., which provides:

" * * *

"3. The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to *any vehicle approaching from the opposite direction which is within the intersection* or so close thereto as to constitute an immediate hazard.

" * * * " (emphasis ours).

There was testimony from plaintiff and her husband to the effect that Gunter's car was 200 feet east of them when they first saw it, at a time when the Roark and Davis cars were stopped on the light; that the Roark and Davis cars entered on the green light; that Gunter entered on the green light and came on through at from 30 to 35 miles per hour. Davis said he saw the Gunter car enter the intersection, and he slowed; that he was in a slow "rolling" turn and stopped with the front wheels 1 foot north of the center line; that the Gunter car was then 40 to 50 feet from him; that his car was hit by the Roark car and was knocked forward into Gunter's path. Witness Dickman corroborated Davis' ver-

sion. Gunter said he entered the intersection on the green light, travelled west at 15 to 20 miles per hour; that he saw the Davis car in a left turn, and that he saw no danger until *suddenly* the Davis car went forward into his lane of travel. The instruction, as given, was not in contravention of the statute. It submitted Gunter's theory of defense under the testimony most favorable to him.

■ Plaintiff says the instruction was offered and given on the theory that after Davis entered the intersection and while Gunter was *approaching* the intersection it was Davis' duty to yield the right of way, whereas, it is argued, Davis was only bound to yield to one coming from the opposite direction and so *close to the intersection as to constitute an immediate* hazard. She says that the instruction, in effect, lays a heavier liability on Davis than the statute imposes, thereby benefiting Gunter. In view of the evidence most favorable to Gunter, and to his theory of the case, we think the criticism is unjustified. There is no evidence *directly* contradictory to that of Davis and Gunter, which was to the effect that each saw and observed the other *after both were in the intersection.* The situation described by the evidence in this case, is unlike that in Steele v. Goosen, (Mo.), 329 S.W.2d 703, 709.

■ It is a sole cause instruction. It required the jury to find that, at the time Davis entered Gunter's lane of travel, in a left turn, the Gunter car was approaching from the opposite direction in such close proximity as to constitute a hazard. In Anthony v. Jennings, (Mo.App.), 368 S.W. 2d 533, 538, this court approved language to the effect that the hazard referred to in the statute is created by the closeness in proximity of the approaching automobile on the through highway and that only in that case is he required to yield. Plaintiff's criticism is not justified.

Plaintiff criticizes instruction No. 8 on the ground that it does not require a consideration of the inferences to be drawn

from the evidence. The criticism was adversely ruled in our discussion of instruction No. 6, supra.

It is charged that instruction No. 9 is erroneous because it instructs that the jury may consider whether or not any testimony is in conflict with the physical facts surrounding the collision, and that it may consider that fact in determining the weight to be given such testimony.

There are many physical facts in evidence and the testimony in regard to some such facts conflicted with other testimony. It was a discretionary instruction. It could not have been prejudicial to plaintiff. The point is ruled against her.

We find no error in Gunter's instruction.

The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court.

All concur.